UNITED STATES of America, Petitioner,

v.

$69,530.00 IN UNITED STATES CURRENCY, Respondent.

No. P–97–CA–004.

United States District Court,
W.D. Texas,
Pecos Division.

June 15, 1998.

David R. Rosado, Assistant U.S. Attorney, El Paso, TX, for the Government.

H. Thomas Hirsch, Hirsch, Stroder & Hobbs, Odessa, TX, for Claimant Daniel Ify Iwegbu.

## ORDER DENYING CLAIMANT'S MOTION TO SUPPRESS

FURGESON, District Judge.

On this day the Court considered Claimant's Motion to Suppress Evidence, filed on March 5, 1998. A bench trial was conducted in connection with this matter on March 13, 1998, with the understanding that, if the Court granted Claimant's Motion, it would not consider any of the evidence sought to be suppressed. After due consideration, the Court is of the opinion that the Motion should be DENIED.

## FACTUAL BACKGROUND

On January 31, 1992, Claimant was stopped at the Border Patrol's permanent checkpoint station in Sierra Blanca, Texas. At that time, he possessed $69,530.00, which the Government seized. These funds are the subject of this civil forfeiture action. Essential to the Government's case is the admis-

sion into evidence of statements made by Claimant to federal agents after he was arrested about one month later, on March 3, 1992, in connection with charges of heroin smuggling in Dallas, Texas.

Following his arrest, Claimant was read his *Miranda* rights and interrogated by Agent Tim Stover of the Drug Enforcement Agency and Special Agent David Hegmann of the U.S. Customs Service (sometimes referred to as the "Agents"). Agents Stover and Hegmann testified that, during this interrogation, Claimant informed them about his detention at the Sierra Blanca checkpoint and about the seizure of the funds. Claimant further informed the Agents that part of this money was his pay for recruiting heroin smuggling couriers and the rest was to be used to pay the couriers themselves.

Agent Stover testified that Claimant, who is Nigerian, was not informed that he had a right to contact the Nigerian Consulate. Agent Stover further stated that he was not aware that he was even obligated to allow Claimant to speak to the Nigerian Consulate. It was the usual practice of the DEA, however, to notify a foreign consulate if it arrested a foreign national such as Claimant. In this case, Agent Stover testified that he notified the Nigerian Consulate via facsimile when Claimant was arrested and that no one from the Consulate ever contacted him on Claimant's behalf.

## DISCUSSION

In his Motion to Suppress, Claimant seeks to suppress the statements he made to these Agents, contending that they violated the Vienna Convention on Consular Relations by: (1) failing to inform him of his right to communicate with the Nigerian Consulate, (2) failing to have the consulate informed of his detention, and (3) failing to have the Consulate arrange for his legal representation—all without delay.

The Court notes at the outset that the Agents did not violate the latter two rights under the Vienna Convention. Agent Stover testified that the DEA did notify the Nigerian Consulate in Washington, D.C., of Claimant's arrest. After receiving notice, the Consulate chose not to involve itself in the matter. The failure of the Consulate to arrange for Claimant's legal representation, therefore, was not the fault of the Agents who interrogated Claimant.

The Government, in its Response, contends that Claimant's Motion should be denied because: (1) Claimant lacks standing to assert violations of the Vienna Convention; (2) Claimant has waived his rights under the Vienna Convention; (3) the issue is untimely; and (4) Claimant has not shown any prejudice.

■ With respect to standing, the Government disputes that the Vienna Convention affords Claimant any individual rights; however, it appears to this Court that Claimant does indeed have a right to be informed that he could communicate with the Nigerian Consulate and that this right was violated. *See Breard v. Greene,* — U.S. —, —, 118 S.Ct. 1352, 1355, 140 L.Ed.2d 529 (1998) (finding that petitioner, who claimed he had not been informed of his right to contact the Paraguayan Consulate, had "failed to exercise *his rights* under the Vienna Convention in conformity with the laws of the United States") (emphasis added); *Faulder v. Johnson,* 81 F.3d 515, 520 (5th Cir.1996) (finding that the State of Texas had violated the Vienna Convention in failing to notify petitioner of his right to contact the Canadian Consulate). With respect to waiver, Agent Stover was not aware that Claimant even had the right to contact the Nigerian Consulate. The Court finds that Claimant could not have waived a right that neither he nor the Agents were aware that he had.

■ In support of its contentions that this issue is untimely and that Claimant has failed to show "prejudice" from the violation, the Government refers the Court to *Faulder v. Johnson,* 81 F.3d 515 (5th Cir.1996), and *Murphy v. Netherland,* 116 F.3d 97 (4th Cir.1997). These two cases considered this issue, however, in the context of a habeas petition. In each case, the reviewing court held that the Defendant had not presented his Vienna Convention claims in state court and therefore was procedurally barred from asserting them for the first time on federal habeas review. To overcome the procedural

bar, each Defendant was required to show "cause" and "prejudice" for the default. *See Faulder,* 81 F.3d at 520; *Murphy,* 116 F.3d at 100. *Accord Breard,* —— U.S. at ——, 118 S.Ct. at 1354 ("Breard could not demonstrate cause and prejudice for this default"); *Villafuerte v. Stewart,* 142 F.3d 1124 (9th Cir. 1998). Here, since Claimant did not raise the Vienna Convention argument in his Dallas criminal prosecution, the Government asserts that he is barred from doing so in this action.

If this case were a habeas case, with its procedural details, the Government would be correct; but this is not a habeas case. Instead, it is a civil forfeiture proceeding, and there is not precedent that the Court can find which would superimpose federal habeas corpus jurisprudence over federal civil forfeiture actions. Indeed, while there is a complicated regime of statutory regulations informing federal habeas proceedings, including the Anti–Terrorism and Effective Death Penalty Act, neither that regime nor anything similar relates to civil forfeiture actions. Therefore, requiring Claimant to show cause or prejudice for failing to raise this claim during his Dallas criminal trial would be inappropriate.

■ Nevertheless, the Court is not persuaded that suppression of Claimant's statements is an appropriate remedy in this case. It is certainly well-settled that suppression of evidence can be an appropriate remedy in a civil forfeiture proceeding, if a Claimant's Fourth or Fifth Amendment rights have been violated. *See One 1958 Plymouth Sedan v. Com. of Pa.,* 380 U.S. 693, 85 S.Ct. 1246, 14 L.Ed.2d 170 (1965). It is equally well established that the Constitution does not mandate suppression of evidence; "the exclusionary rule operates as a judicially created remedy designed to safeguard against

future violations of [constitutional] rights through the rule's general deterrent effect." *Arizona v. Evans,* 514 U.S. 1, 10, 115 S.Ct. 1185, 131 L.Ed.2d 34 (1995).

Claimant's right to be informed that he could contact the Nigerian Consulate is not a constitutional right, and herein lies the problem. The "judicially created remedy" of exclusion of evidence obtained in violation of the Constitution has never been applied to violations of the Vienna Convention on Consular Relations. This Court declines the invitation to apply it in this instance.

■ The exclusionary rule is designed to protect core constitutional values; it should only be employed when those values are implicated. A convention or treaty signed by the United States does not alter or add to our Constitution. Such international agreements are important and are entitled to enforcement, as written, but they are not the bedrock and foundation of our essential liberties and accordingly should not be cloaked with the "nontextual and unprecedented remedy"[1] that protects those liberties. This is especially true today in light of the thoughtful debates regarding the exclusionary rule (and other Fourth and Fifth Amendment issues) now being joined on the national level by constitutional scholars.[2] Thus, in absence of binding authority to the contrary, the Court concludes that a violation of a person's rights under the Vienna Convention does not trigger the exclusionary rule, unless the violation also results in an infringement of the person's constitutional rights under the Fourth, Fifth, Sixth, or Fourteenth Amendments.

■ In this case, the Court finds that the Claimant's constitutional rights were not violated during the time he made his statements to the Agents. The Agents read Claimant

---

1. Akhil Reed Amar, *The Constitution and Criminal Procedure: First Principles* 25 (1997).

2. *See id. See also* Carol S. Steiker, *Second Thoughts about First Principles,* 101 Harv. L.Rev. 820 (1994); Albert W. Alschuler, *A Peculiar Privilege in Historical Perspective: The Right to Remain Silent,* 94 Mich. L.Rev. 2625 (1996); Akhil Reed Amar and Renee B. Lettow, *Fifth Amendment First Principles: The Self–Incrimination Clause,* 93 Mich.L.Rev. 857 (1995); Yale Kamisar, *On the "Fruits" of Miranda Violations,*

*Coerced Confessions and Compelled Testimony,* 93 Mich. L.Rev. 929 (1995); Akhil Reed Amar and Renee B. Lettow, *Self–Incrimination and the Constitution: A Brief Rejoinder to Professor Kamisar,* 93 Mich. L.Rev. 1011 (1994); Tracey Maclin, *The Complexity of the Fourth Amendment: A Historical Review,* 77 B.U. L.Rev. 925 (1997); Donald Dripps, *Akil Amar on Criminal Procedure and Constitutional Law: "Here I Go Down That Wrong Road Again,"* 74 N.C. L.Rev. 1559 (1996).

his *Miranda* warnings, including the right to counsel. Claimant waived his right to counsel and proceeded to make statements connecting the Sierra Blanca funds with his heroin smuggling activities. Based on the testimony of the agents, the Court finds that Claimant's statements were made freely, knowingly and voluntarily and therefore should not be suppressed. *Cf. Oregon v. Elstad,* 470 U.S. 298, 105 S.Ct. 1285, 84 L.Ed.2d 222 (1985) (failure to *Mirandize* defendant does not automatically trigger exclusionary rule; trial court must still determine if statements were made knowingly and voluntarily). The Court notes further that the Agents satisfied the spirit of the Vienna Convention when they notified the Nigerian Consulate that they had custody of Claimant, thereby giving the Consulate an opportunity to act on Claimant's behalf if it chose to do so. Accordingly,

It is **ORDERED** that Claimant's Motion to Suppress be **DENIED**.