Ricardo Alcides **MELENDEZ**,
Appellant.

v.

The **STATE** of Texas, Appellee,

No. 01–97–00870–CR.

Court of Appeals of Texas,
Houston (1st Dist.).

Oct. 21, 1999.

James Lindeman, Houston, for Appellant.

John B. Holmes, William Delmore, III, Houston, for State.

Panel consists of Justices MIRABAL, HEDGES, and SMITH.[*]

## OPINION

JACKSON B. SMITH, Jr., Justice (Retired).

Appellant, Ricardo Alcides Melendez, was convicted of murder by a jury. The jury assessed punishment at 60 years confinement. Melendez, 16 years old at the time of the offense, had been certified by a juvenile court to stand trial as an adult.

In point of error one, Melendez contends that the criminal district court did not have jurisdiction because the juvenile court's waiver of jurisdiction violated the Vienna Convention of Consular Relations which provides for notice to be given to a consular post when a foreign national is taken into custody, and for the foreign national to be informed that he has the right to speak with consular officials. Melendez claims to be a citizen of El Salvador but that no notice was given to the El Salvadoran consulate and he was not advised that he could speak with consular officials.

In his second point of error, Melendez complains that the district court erroneously sustained the State's objection to proper defense argument during the guilt phase. Melendez argues in his third point of error that the criminal district court also violated the Vienna Convention when, during the punishment phase, it denied Melendez' motion to suppress evidence of his prior juvenile adjudications.

## FACTUAL BACKGROUND

On the night of July 23, 1996, nine Hispanic immigrants were living in a Houston apartment, sleeping in two bedrooms.

Early in the evening, 13–year–old Alvarado, one of the immigrants, heard breaking glass and looked out the apartment window to see three men shining a flashlight into the cars parked in front of the apartment. Gomez, another resident of the apartment, also looked out and recognized two men who had stolen his car stereo the night before. The intruders drove off in a blue car when they realized they had been seen.

A short time later, Alvarado was awakened by the sound of the bedroom window being opened and he saw a man climbing through the window pointing a gun. At that point, Sergio Rochas and Jose "Henry" Alva woke up and the man in the window fired two shots at them, hitting Alva in the chest. Alva died at the scene from the gunshot. Police investigators found two spent cartridge cases from a 9 mm semi-automatic pistol in the parking lot outside the apartment window.

The night after Alva's murder, Houston police officers stopped a blue car in which Melendez was riding and discovered a 9 mm pistol under the floor mat near his right foot. When 16–year–old Melendez was arrested for carrying a weapon, it was discovered that he was wanted as an escapee from the Texas Youth Commission. A Houston Police Department firearms examiner later determined that the 9 mm pistol found in the car near Melendez' foot was the same pistol used to shoot and kill Alva.

From a police department photo spread, Gomez and Rochas tentatively identified Melendez as one of the persons they had seen breaking into Gomez' car outside the apartment. Alvarado positively identified Melendez' photograph as the person who opened the window and shot Henry Alva.

After the juvenile court waived jurisdiction, Melendez was transferred to criminal district court where he was indicted for murder. Shortly before trial, Melendez

---

[*] The Honorable Jackson B. Smith, Jr., retired Justice, Court of Appeals, First District of Texas at Houston, participating by assignment.

filed a "Motion to Suppress Evidence of Prior Adjudications of Delinquency Because of Violation of the Vienna Convention." That trial resulted in a hung jury, and a mistrial was declared. In a second trial, the jury found Melendez guilty of murder. During the punishment stage of the trial, the judge denied Melendez' "Motion to Suppress Evidence of Prior Adjudications of Delinquency Because of Violation of Vienna Convention." The State introduced the prior adjudications and questioned Melendez about them. The jury assessed punishment at 60 years in prison.

### Point of Error One

■ In his first point of error, Melendez contends that the juvenile court's disregard of the notice provisions of the Vienna Convention on Consular Relations [1] resulted·in an improper waiver of jurisdiction; therefore, the transfer to criminal district court was void, and that court lacked jurisdiction to try him for murder. Melendez claims to be a citizen of El Salvador and, as such, he was entitled to have the El Salvadoran consulate notified that he had been arrested and that he should have been informed that he could speak with the consulate officials from his country. Because the State did not provide notice to the El Salvadoran consulate, or to him, in violation of the notice provisions of the Vienna Convention, he asserts he was improperly transferred to the district court. Melendez frames the issue as whether the provisions of the Vienna Convention have the same importance as the technical notice provisions of the Texas Family Code which require the State to show that it has satisfied the statutory notice provisions for

the purpose of considering a discretionary transfer to district court.

■ To complain of an error in the certification process, a person must appeal the transfer order itself to the court of appeals. *Adams v. State,* 827 S.W.2d 31, 33 (Tex.App.—Dallas 1992, no pet.); *Lowe v. State,* 676 S.W.2d 658, 660–61 (Tex. App.—Houston [1st Dist.] 1984, pet. ref'd). An appellant may raise only a jurisdictional error in the transfer process for the first time on appeal from a conviction after the transfer. *Adams v. State,* 827 S.W.2d at 33. *See Watson v. State,* 587 S.W.2d 161, 162 (Tex.Crim.App.1979) (collateral attack on certification proceeding was proper because record showed summons was not served on Watson in the transfer proceeding—a jurisdictional requirement).

■ Section 54.02 of the Texas Family Code authorizes the juvenile court to waive its exclusive original jurisdiction under certain circumstances and to transfer a child to the appropriate district court or criminal district court for criminal proceedings. Tex. Fam.Code § 54.02 (Vernon 1996). The petition and notice requirements of sections 53.04, 53.05, 53.06 and 53.07 of the Texas Family Code must be satisfied, and the summons must state that the hearing is for the purpose of considering discretionary transfer to criminal court. *In the Matter of D.W.M.,* 562 S.W.2d 851, 852–53 (Tex.1978) (discussing requirements for waiver of jurisdiction).

■ Melendez correctly states that, absent satisfaction of the statutory notice provisions, a juvenile court is without jurisdiction to transfer a juvenile to district court. *Allen v. State,* 657 S.W.2d 815–16 (Tex.App.—Houston [1st Dist.] 1982, *pet.*

---

1. Vienna Convention on Consular Relations, April 24, 1963, [1970] 21 U.S.T. 77, T.I.A.S. No. 6820. Article 36 of the treaty states, in pertinent part:

    [b] if he so requests, the competent authorities of the receiving State, shall, without delay, inform the consular post of the sending State if within its consular district a national of the State is arrested or com-

mitted to prison or to custody pending trial or is detained in any other manner.... The said authorities shall inform the person concerned without delay of his/her rights under this sub-paragraph; [c] consular officials shall have the right to visit a national who is in prison, custody or detention, to converse and correspond with him and to arrange for his legal representation.

*dism'd as improvidently granted,* 659 S.W.2d 410 (Tex.Crim.App.1983). He then urges this Court to extend the rationale of *Allen* and equate the mandatory notice provisions of the Texas Family Code with the notice provisions of the Vienna Convention on Consular Relations and hold that the juvenile court's transfer of jurisdiction was not proper.

We decline to hold that the notice provisions of the Vienna Convention create a new jurisdictional requirement in addition to, or supersede, the notice requirements of the Texas Family Code. From our review of the relevant treaty provisions and available authorities, we have concluded that a failure to comply with those provisions does not operate to deprive a Texas juvenile court of its authority to transfer a juvenile to district court.

First, it is not settled that an individual has standing to assert a violation of the convention. *Breard v. Greene,* 523 U.S. 371, 118 S.Ct. 1352, 1354–55, 140 L.Ed.2d 529 (1998) (reasoning that absent clear and express statement to the contrary, the procedural rules of the forum State govern implementation of the treaty in that State but that Vienna Convention arguably confers right to consular. assistance following arrest); *Murphy v. Netherland,* 116 F.3d 97, 100 (4th Cir.1997) (reasoning that even if the Vienna Convention could be said to create individual rights (as opposed to setting out the rights and obligations of signatory nations), it certainly does not create constitutional rights nor does it convert violations of treaty provisions into constitutional rights); *United States v. Esparza–Ponce,* 7 F.Supp.2d 1084, 1095–96 (S.D.Cal.1998) (discussing "murky" inquiry and muddled issue of whether the Vienna Convention confers individual rights and concluding that a violation of the notice provisions does not rise to the level of a *Miranda* violation such as to require suppression of evidence); *Paraguay v. Allen,* 949 F.Supp. 1269, 1274 (E.D.Va.1996) (suggesting that the Convention does not confer private enforceable rights because it is not self-executing), *aff'd,* 134 F.3d 622 (4th Cir.1998);

Secondly, at least one state supreme court has held that any failure to satisfy the notice provisions of the Vienna Convention does not deprive a juvenile court of jurisdiction in a parental termination/custody proceeding. *In re Stephanie M.,* 7 Cal.4th 295, 27 Cal.Rptr.2d 595, 867 P.2d 706 (1994). The California Supreme Court reasoned that the treaty language, "giving of this information shall, however, be without prejudice to the operation of the laws and regulations of the receiving State," acknowledges that the receiving State has jurisdiction to apply its own laws to foreign nationals within its border and that such aid is expressly subject to the practices and procedures of the receiving State. *Id.* at 712. The Court concluded that the Convention concedes the jurisdiction of a court of the receiving state to apply its laws to a foreign national and that the operation of the receiving state's laws are in no way dependent upon the notice prescribed by the Convention. *Id.* at 713. Therefore, failure to give notice does not invalidate judicial action taken without such notice. *Id.* at 712–13.

Third, the notice provisions of the Vienna Convention affect only foreign nationals. *Maldonado v. State,* 998 S.W.2d 239, 246–47 (Tex.Crim.App.1999). The record before this Court does not establish that Melendez is, in fact, a foreign national. It only shows that Melendez was born in El Salvador on August 28, 1979 and moved to the United States with his parents in 1985 when he was five years old. The evidence does not preclude the possibility that Melendez may have been born in El Salvador to a parent(s) who held United States citizenship so that he could be an American national under 8 U.S.C. § 1401 (West 1994) or, if his parents became naturalized citizens after his birth, he could be an American citizen under 8 U.S.C. §§ 1431 or 1432 (West 1994). Because there is no evidence in the record that Melendez is not a United

States citizen, we cannot conclude that the notice provisions were triggered in the first instance.

Finally, there is no Texas case on point, and those courts that have considered the notice provisions of the Vienna Convention under Texas law in other contexts do not support Melendez' argument that we should impose a jurisdictional requirement on the juvenile courts of this State for its violation. *Cardona v. State*, 973 S.W.2d 412, 417 (Tex.App.—Austin 1998, no pet.) (under facts of case, violation of notice provisions did not merit reversal of murder conviction); *United States v. $69,-530.00 in United States Currency*, 22 F.Supp.2d 593, 595 (W.D.Texas 1998) (reasoning that defendant's right to notice that he can contact foreign consulate is not a constitutional right and, therefore, does not trigger the exclusionary rule unless the violation infringes on Constitutional rights).

If the Vienna Convention does not create constitutional rights, it should not create a jurisdictional requirement under the Texas Family Code for juvenile transfer proceedings. We agree with the reasoning of the Fifth Circuit Court of Appeals in *Kreimerman v. Casa Veerkamp*, which examined whether another treaty designed to facilitate service of letters rogatory among signatory nations preempted all other means of effecting service on Mexican nationals, including the Texas Long–Arm Statute. 22 F.3d 634 (5th Cir.1994). In concluding that the treaty did not preclude service by all other means, the Fifth Circuit Court of Appeals reasoned that courts should interpret treaty provisions narrowly for fear of waiving sovereign rights that the government or people of the State never intended to cede. *Id.*, at 639.

We hold that a failure to comply with the notice provisions of the Vienna Convention does not rise to the level of jurisdictional error. The juvenile court had jurisdiction to transfer Melendez; the district court obtained jurisdiction to try him

for murder. We overrule point of error one.

### Point of Error Two

■ Melendez complains that the trial court erred when it sustained the State's objection to proper defense argument during the guilt phase of the trial. As a result, Melendez contends that he was denied the right to effective assistance of counsel. We overrule the point.

■ To be permissible, jury argument must fall within one of four general areas: (1) summation of the evidence; (2) reasonable deductions from the evidence; (3) answer to argument of opposing counsel; and (4) plea for law enforcement. *Kinnamon v. State*, 791 S.W.2d 84, 89 (Tex.Crim.App.1990). Counsel may draw all reasonable inferences from the facts in evidence that are "reasonable, fair, and legitimate." But argument that misstates the law or is contrary to the court's charge is improper. *Grant v. State*, 738 S.W.2d 309, 311 (Tex.App.—Houston [1st Dist.] 1987, pet. ref'd). In particular, defense counsel may not make statements about the State's burden of proof that are inaccurate or misleading. *Loar v. State*, 627 S.W.2d 399, 401 (Tex.Crim.App.1981) (trial court did not err in sustaining prosecution's objection to appellant's improper statement of burden of proof). Although the Court of Criminal Appeals has reasoned that improper denial of a jury argument may constitute a denial of the right to counsel, that holding assumes that the jury argument is one the defendant is entitled to make. *McGee v. State*, 774 S.W.2d 229, 238 (Tex.Crim.App.1989).

During the trial, defense counsel attempted to discredit the credibility of the various prosecution witnesses, in particular, that of the 13–year–old eyewitness, Alvarado. During closing arguments in the guilt phase, defense counsel's efforts to convince the jury that it should not believe Alvarado's testimony included the following remarks:

But to really be, you know, proof beyond a reasonable doubt, proof so reliable— and this is in the jury charge. This is the standard. We talked about it earlier. Proof so reliable it's of such a convincing character that you—and that is each one of you personally—that you, okay, not somebody else—that you would be willing to rely and act on it without hesitation in the most important of your own affairs.

Now, I would suggest to you just as a, you know, basic proposition here that there is not one of you, to be honest, if you were talking about the most important of your personal affairs would rely on Mr. Alvarado. Okay? You wouldn't rely on him to take care of your kids, would you?

The State objected to "improper argument," and the trial court sustained the objection. The trial court did not abuse its discretion in sustaining the objection because the defense argument improperly suggested that a conviction could not be based on the testimony of a State's witness with whom the jurors would not entrust the care of their children. The argument contained statements about the State's burden of proof that were inaccurate and misleading; and thus, the argument was improper. *See Loar,* 627 S.W.2d at 401. We overrule the second point of error.

### Point of Error Three

 In his final point of error, Melendez contends that the trial court erred during the punishment stage of the trial when it denied his motion to suppress evidence of five prior juvenile adjudications due to Vienna Convention violations which took place at the time of the prior adjudications. This complaint seems to be an attempt to right all prior supposed wrongs at one time. Melendez further urges this Court to analogize a failure to comply with the notice provisions of the Vienna Convention to the denial of counsel and hold that he is entitled to collaterally

attack the prior adjudications. We decline to do so.

A prior judgment may be collaterally attacked when offered in evidence in a subsequent proceeding only if it is void or tainted by a constitutional defect. *Galloway v. State,* 578 S.W.2d 142, 143 (Tex.Crim.App.1979). A foreign national's right to be informed that he can contact his consulate is not a constitutional right. *$69,530.00 in United States Currency,* 22 F.Supp.2d at 595. We have already held that the notice provisions of the Vienna Convention are not jurisdictional in nature. There has been no showing that Melendez is, in fact, a foreign national of El Salvador entitled to whatever protections the Vienna Convention may afford. Finally, the burden of proof is on the party attacking a prior judgment to demonstrate its invalidity and make an adequate record for appeal. *Hadnot v. State,* 851 S.W.2d 378, 380 (Tex.App.—Houston [1st Dist.] 1993, pet. ref'd). Appellant has not done so. We overrule point of error three.

The judgment of the trial court is affirmed.