**Opinion issued March 21, 2013**



In The

# Court of Appeals

For The

# First District of Texas

————————————

**NO. 01-12-00202-CR**

————————————

**DARRYL DEWAYNE HARPER, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 248th District Court**
**Harris County, Texas**
**Trial Court Case No. 1297713**

---

**MEMORANDUM OPINION**

A jury found appellant, Darryl Dewayne Harper, guilty of the offense of

aggravated assault[1] and assessed his punishment at confinement for forty years.  In

---

[1]     *See* TEX. PENAL CODE ANN. § 22.02 (Vernon 2011).

two issues, appellant contends that the trial court erred in allowing him "the right to present a defense" and "injecting itself into closing argument."

We affirm.

## Background

Frank Murchinson, the complainant, testified that on February 21, 2011, he drove his car to the house of Deanne Foster, who he started dating in January 2011. As he approached Foster's house on Tiffany Drive, he noticed a burgundy-colored car parked nearby that he did not recognize. The complainant then parked his car in Foster's driveway and waited to see if anyone exited the burgundy-colored car. Eventually, he exited his car, heard two gunshots, and was shot once in the leg. The complainant looked up from the ground and saw appellant, Foster's ex-boyfriend, pointing a gun at him and firing it. The complainant crawled under his car until appellant left. He was transported to a hospital, where he lapsed into a coma for approximately one month. When he awoke, the complainant learned that he had been shot five times in his stomach and twice in his leg. Several of appellant's brothers later contacted him and told him not to testify against appellant.

Houston Police Department ("HPD") Officer T. Wyatt testified that on February 21, 2011, he received a dispatch to report to a "shooting in progress" at a house on Tiffany Drive. When Wyatt arrived at Foster's house, the complainant

2

was being placed in an ambulance with a gunshot wound. Wyatt spoke with Foster and Sandra Purnell, who was on her way to visit one of Foster's neighbors, and both women identified appellant as a suspect in the shooting. Wyatt found bullet casings in Foster's front yard and driveway and several bullets lodged in a Jeep parked in front of the house. He also recovered a set of keys, which Foster told him belonged to appellant, and a black glove. Wyatt was unable to speak with the complainant about the incident because he had lapsed into a coma.

HPD Officer C. Liu, who was assigned to investigate the shooting, testified that he spoke with Foster and learned that the complainant had lapsed into a coma. Foster told Liu that she saw two people, appellant and Jowama Chambers, running away from her house after the shooting. Liu interviewed appellant, who said that he had been at a Foodarama grocery store at the time of the shooting. Liu visited the Foodarama, which was 0.4 miles from Foster's house, and watched a store surveillance tape indicating that appellant had entered the store at 8:54 p.m. Liu noted that the shooting was first reported at 8:08 p.m. and Foster, the complainant, and Purnell all identified appellant as the shooter from a photographic array.

Foster testified that she first met appellant in 2006, they started dating in May 2008, and they had a daughter together. After appellant started physically abusing Foster, she ended their relationship in May 2009. In January 2011, Foster started dating the complainant, and soon thereafter appellant sent her texts reading,

3

"How could you do this to me? How do you mess with a kid?" On February 21, 2011, she was painting her son's bedroom when she heard gunshots in her front yard. Foster opened her front door to see that the complainant had been shot and appellant and one other person running away. After appellant entered a burgundy-colored car and "sped off" away from her house, Foster heard two more gunshots come from the burgundy-colored car. Foster noted that she had been expecting the complainant to come to her house that night. She also identified for the jury the keys found in her front yard as belonging to appellant. After the shooting, appellant wrote her several letters, claiming that "someone else had actually did the crime" and requesting that Foster not testify.

Purnell testified that on February 21, 2011, she was driving her car to a friend's house when she heard a "commotion" to the left of her car. She heard someone say, "We got you now," followed by several gunshots. Purnell then pulled her car over into a driveway and turned to see appellant, who was carrying a gun, and another young male run and enter a burgundy-colored car.

Christina Davis, appellant's sister-in-law, testified that on February 21, 2011, she was at the house of appellant's mother with appellant and other family members. She noted that at approximately 6:30 or 6:40 p.m., appellant drove to the Foodarama "down the street" along with his daughter, nieces, and nephews. He returned approximately 30 minutes later and started cooking dinner. After

4

dinner, Davis, appellant, and appellant's girlfriend watched the television program *Basketball Wives*. At some point, Davis fell asleep, and when she woke up at approximately 2:00 a.m., appellant and his girlfriend had gone to his bedroom.

Glenda Lott, a girlfriend of one of appellant's brothers, also testified that on February 21, 2011, she visited the house of appellant's mother. Appellant left to go to a grocery store. Lott watched *Basketball Wives* until approximately 2:00 a.m., and, during that time, appellant watched television in his room with his girlfriend. On cross-examination, Lott stated that she watched *Basketball Wives* on "regular TV" and not a recording of it. The State then showed Lott an issue of a TV Guide, and Lott testified that the TV Guide did not list *Basketball Wives* as broadcast on the night on February 21, 2011.

### Evidentiary Rulings

In his first issue, appellant argues that the trial court denied him the right to present a defense, in violation of the Sixth Amendment of the United States Constitution, because it "specifically allow[ed] the prosecutor to impeach the alibi witnesses with a television schedule" and did not allow him "to respond."

We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *See Rodriguez v. State*, 203 S.W.3d 837, 841 (Tex. Crim. App. 2006). Therefore, we will not reverse a trial court's ruling as long as it is within the "zone of reasonable disagreement." *See id.*

The Sixth Amendment guarantees a defendant "a meaningful opportunity to present a complete defense." *Crane v. Kentucky*, 476 U.S. 683, 690, 106 S. Ct. 2142, 2146 (1984) (quoting *California v. Trombetta*, 467 U.S. 479, 485, 104 S. Ct. 2528, 2530 (1984)). There are two distinct situations in which rulings excluding a defendant's evidence "might rise to the level of a constitutional violation: (1) a state evidentiary rule which categorically and arbitrarily prohibits the defendant from offering otherwise relevant, reliable evidence which is vital to his defense; and (2) a trial court's clearly erroneous ruling excluding otherwise relevant, reliable evidence which 'forms such a vital portion of the case that exclusion effectively precludes the defendant from presenting a defense.'" *Wiley v. State*, 74 S.W.3d 399, 405 (Tex. Crim. App. 2002) (quoting *Potier v. State,* 68 S.W.3d 657, 659–62, 665 (Tex. Crim. App. 2002)). "Exclusions of evidence are unconstitutional only if they 'significantly undermine fundamental elements of the accused's defense.'" *Potier*, 68 S.W.3d at 666 (quoting *United States v. Scheffer*, 523 U.S. 303, 315, 118 S. Ct. 1261, 1267–68 (1998)). The exclusion of evidence is not prejudicial if the defendant "was not prevented from presenting the substance of his defense to the jury." *Id.* (quoting *United States v. Willie*, 941 F.2d 1384, 1398–99 (10th Cir. 1991)).

During its cross-examination of Lott, the State asked the trial court to take judicial notice of information in an issue of TV Guide. The trial court refused to

6

take judicial notice of the information, but allowed the State to present it to Lott "as if it were an offense report" and "talk to her about what was scheduled to appear." The State then presented the TV Guide to Lott in the following exchange:

[STATE]:  Now, this is the schedule for what date?

[LOTT]:  The 21st.

[STATE]:  Of?

[LOTT]:  February 2011.

[STATE]:  And this being VH1, *Basketball Wives* was not scheduled to play on that night, was it?

[LOTT]:  Uh-huh. I don't see it.

On re-direct examination, appellant attempted to rehabilitate Lott's testimony by noting that she stayed up until 2:30 a.m. and asking whether *Basketball Wives* might have come on television after midnight on the next day. However, the State objected to the question as calling for "speculation," and the trial court sustained the objection.

To the extent that appellant complains that the trial court erred in allowing the State to present the TV Guide to Lott, he did not object to its admission or to the State's line of questioning in the trial court. Likewise, to the extent that appellant complains that the trial court erred in sustaining the State's objections to his own line of questioning, he did not argue to the trial court that its ruling violated his Sixth Amendment right to present a defense. To preserve error, a

7

defendant must timely object and obtain a ruling. *See* TEX. R. APP. P. 33.1(a). Accordingly, we hold that appellant has not preserved this complaint for review. *See Reyna v. State*, 168 S.W.3d 173, 176–79 (Tex. Crim. App. 2005) (stating that failure to present argument to trial court in support of admission of excluded evidence waived argument on appeal); *Broxton v. State*, 909 S.W.2d 912, 918 (Tex. Crim. App. 1995) (holding that defendant's failure to argue in trial court that he was denied right to present defense waived argument on appeal); *Fernandez v. State*, No. 14-09-00369-CR, 2010 WL 1486971, at *7 (Tex. App.—Houston [14th Dist.] Apr. 15, 2010, no pet.) (holding that defendant waived argument that trial court violated Sixth Amendment in excluding his evidence by failing to make argument in trial court).

We overrule appellant's first issue.

## Closing Argument

In his second issue, appellant argues that the trial court denied him the right to present a defense, in violation of the Sixth Amendment, because it injected itself into the closing argument and prevented him from "responding to the harmful contents of the TV Guide."

Generally, permissible jury argument concerns (1) a summation of the evidence; (2) reasonable deductions from the evidence; (3) answering argument of opposing counsel; or (4) pleas for law enforcement. *Wesbrook v. State*, 29 S.W.3d

8

103, 115 (Tex. Crim. App. 2000) (en banc). A trial court has broad discretion in controlling the scope of closing argument, but it may not prevent defense counsel from making a point essential to the defense. *Lemos v. State*, 130 S.W.3d 888, 892 (Tex. App.—El Paso 2004, no pet.); *see Herring v. New York*, 422 U.S. 853, 862–64, 95 S. Ct. 2550, 2555–56 (1975). All inferences from the evidence that are reasonable, fair, and legitimate may be argued by the defense. *Melendez v. State*, 4 S.W.3d 437, 442 (Tex. App.—Houston [1st Dist.] 1999, no pet.), *overruled on other grounds*, *Small v. State*, 23 S.W.3d 549 (Tex. App.—Houston [1st Dist.] 2000, pet. ref'd). However, a trial court has the duty to sustain objections to argument when the argument violates some rule or statute. *See Bray v. State,* 478 S.W.2d 89, 90 (Tex. Crim. App. 1972); *Eckert v. State*, 672 S.W.2d 600, 603 (Tex. App.—Austin 1984, pet. ref'd).

Specifically, appellant complains of the following exchange, made by his counsel during closing argument:

| | |
|---|---|
| [APPELLANT'S COUNSEL]: | Now, the prosecution would have you believe that they're a bunch of liars because they said that they watched *Basketball Wives* and they bring you schedules which say, Yeah, there's no *Basketball Wives* on the 21st. |
| [TRIAL COURT]: | Those are not in evidence, counsel. |

| | |
|---|---|
| [STATE]: | Objection, arguing facts not in evidence. |
| [TRIAL COURT]: | You can continue, but you're holding something that's not in evidence. |
| [APPELLANT'S COUNSEL]: | Well, you know, *Basketball Wives* was running from – up to 10:30. They never showed you – |
| [STATE]: | Objection to arguing facts not in evidence. |
| [TRIAL COURT]: | That's sustained. |
| [APPELLANT'S COUNSEL]: | We have to ask ourselves: Did they give you the full picture? These girls are watching TV until 2:00 o'clock in the morning. There's shows continuously coming on. No one said that they were watching *Basketball Wives* at exactly 6:30 when that guy was making dinner. No. They said that they remember watching *Basketball Wives*. That show was on that night. They remembered that at some point, they watched the show. It does come on. It comes on late at night when they were up until 2:00 o'clock in the morning. |
| [STATE]: | Objection, arguing facts not in evidence. |

| [TRIAL COURT]: | Excuse me, counsel. Sustained. Arguing facts not in evidence. |
| [STATE]: | Your Honor, I'm going to ask that the jury disregard the comment. |
| [TRIAL COURT]: | The jury is instructed to disregard the last comment. |

Interjections by a trial court that correct misstatements or misrepresentations of previously admitted testimony, or that clear up points of confusion, are not improper. *See Jasper v. State*, 61 S.W.3d 413, 421 (Tex. Crim. App. 2001); *Watson v. State*, 176 S.W.3d 413, 418 (Tex. App.—Houston [1st Dist.] 2004, no pet.). Here, the trial court's comments and rulings regarding the closing argument of appellant's trial counsel served to clarify to the jury that the TV Guide was not admitted into evidence. Again, appellant did not move to admit the TV Guide into evidence himself or object to the State using the TV Guide during trial. The trial court could have reasonably concluded that the assertion by defense counsel that *Basketball Wives* came on "late at night until 2:00 o'clock in the morning" may have been interpreted by the jury as information contained in the TV Guide. We cannot conclude that the trial court violated appellant's fundamental rights in either its comments or its rulings regarding closing argument. *See Watson*, 176 S.W.3d at 418. Accordingly, we hold that the trial court did not err in making its

11

comments or sustaining the State's objections about the TV Guide during appellant's closing argument.

We overrule appellant's second issue.

## Conclusion

We affirm the judgment of the trial court.


Terry Jennings
Justice

Panel consists of Justices Jennings, Bland, and Massengale.

Do not publish. TEX. R. APP. P. 47.2(b).