**Opinion issued June 6, 2019**



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-18-00272-CR

_____

**CHRISTIAN BRIAN DOMM, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

On Appeal from the 355th District Court
Hood County, Texas[1]
Trial Court Case No. CR13530

## MEMORANDUM OPINION

---

[1]     The Texas Supreme Court transferred this appeal from the Court of Appeals for the Second District of Texas.  *See* TEX. GOV'T CODE § 73.001 (authorizing transfer of cases between courts of appeals).

A jury convicted appellant, Christian Brian Domm, of driving while intoxicated ["DWI"], subsequent offense,[2] found one enhancement paragraph true, and assessed punishment at 20 years' confinement and a $5,000 fine. In a single issue on appeal, appellant contends that the trial court abused its discretion in limiting trial counsel's closing argument. We affirm.

## BACKGROUND

### The arrest

Appellant was stopped for speeding, and the arresting officer noticed that appellant's eyes were bloodshot and glassy. The officer also smelled alcohol inside the vehicle and noticed that three beer cans had been thrown out of the car. Appellant's two passengers admitted to throwing the cans.

After failing to pass several field sobriety tests, appellant was arrested for driving while intoxicated and taken to jail. There, he was read his statutory warnings and asked to take either a breath or blood test, both of which he refused. He also refused a DWI interview.

The arresting officer obtained a search warrant for appellant's blood. He did not hand appellant a copy of the warrant, but instead, placed a copy with appellant's property at the jail. After obtaining the warrant, the arresting officer took appellant

---

[2]    *See* TEX. PENAL CODE §§ 49.04, 49.09(b)(1).

to the hospital, where his blood was drawn. Nearly three hours after the traffic stop,

appellant's blood alcohol content was 0.112.

***The trial***

At trial, appellant requested and received a jury instruction pursuant to article

38.23(a) of the Texas Code of Criminal Procedure, which provides:

> No evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case.
>
> In any case where the legal evidence raises an issue hereunder, the jury shall be instructed that if it believes, or has a reasonable doubt, that the evidence was obtained in violation of the provisions of this Article, then and in such event, the jury shall disregard any such evidence so obtained.

TEX. CODE CRIM. PROC. art. 38.23(a).

During closing argument, appellant's counsel attempted to argue that the

blood-draw evidence was illegally obtained and should be disregarded because the

arresting officer did not give appellant a copy of the search warrant.[3] Specifically,

the following exchange took place:

---

[3]    Texas Code of Criminal Procedure article 18.06(b), provides in part:

> On searching the place ordered to be searched, the officer executing the warrant shall present a copy of the warrant to the owner of the place, if he is present.

TEX. CODE CRIM. PROC. art. 18.06(b).

3

[Defense Counsel]: But let's go back to the search warrant. I want you to look on page 2, Paragraph 5. Bar none, that is the paragraph we seek to have you focus on. That—the trooper stands there with the papers and says, "Come on. I've got the warrant."

Now, the law says, "Serve him with a warrant. Give him the warrant."

He's standing right behind a fax machine—

[Prosecutor]: Your Honor, I'm going to object to this argument, telling—this counsel telling the jury what the law is. That's the purview of the Court.

[The Court]: The law is stated in the charge. You can argue that portion of the law that's contained within the Court's charge.

[Defense counsel]: Thank you.

[Prosecutor]: Well, Your Honor, there's nothing in your charge about search warrants or how they're supposed to be executed or anything.

[The Court]: Well, I'll sustain that objection.

After the trial court sustained the State's objection, Defense counsel nonetheless continued to argue that the blood was illegally drawn because appellant was not given a copy of the search warrant.

So you can't get evidence illegally and, if you do, you can't rely on it. You can't use it. If you read it, if you have a reasonable doubt that the blood was drawn illegally, then you—if you have a reasonable doubt, you shall disregard any such evidence so obtained. Without the blood, you've got to go back to, "Was he impaired?"

He wasn't swerving. He wasn't driving erratically. He was doing nothing like that. He had a dip in his mouth. He comes out, he talks to the police officer. The police officer—or the trooper says, "There's beer on the ground."

4

That didn't make him happy, I'm sure. And the whole thing was he wasn't impaired. That's just the sum and substance of it. If he was arrested based solely on the HGN test and the alphabet, come on. I mean that's just not even realistic. ***The blood was not obtained legally. The search warrant was not provided to [appellant].***

And I was so careful on questioning Trooper Wilson. I want you—remember that? "So you had [the warrant] in your hand, right?"

And then they had to wait at the hospital for awhile—just a little bit—for the gal to get there and for him—remember, Tracie said he was meticulous about the paperwork: "I had to wait."

So during that time, ***he could have handed [appellant] the search warrant. His—that's all he had to do. He's saying, "Search warrant." That's all he had to do. And, instead, didn't do it, so—***

\* \* \* \*

***So we're asking you to look at that drawing of blood. It's there for a reason that the search warrant has to be given to you. You have—***

[Prosecutor]: Your Honor, I object to that. That's out of your instructions.

[Trial Court]: It's argument. ***I'll allow it.***

\* \* \* \*

[Defense counsel]: But we still come back to the main thing, Paragraph 5. If that blood was drawn illegally, you can elect to disregard anything associated with that blood.

\* \* \* \*

So we ask that you look at the evidence, consider the evidence, read Paragraph 5, and decide for yourselves, ***"Should the trooper have given him a copy of the subpoena search warrant?"***

***"Yeah."***

*And if he should have and he didn't, then follow Paragraph 5. You can disregard the blood and the results thereof. We ask you to find [appellant] innocent, not guilty.*

During the Prosecutor's closing argument, he argued as follows:

[Prosecutor]: There's nothing in these instructions—Judge Walton gives you all the law you need, all of it, and there is nothing in these instructions about giving a copy of a search warrant to anybody, and so I'm going to submit to you: If you follow the instructions that Judge Walton has given you, then you completely disregard all of this. But even if the defense is right and the law is required that a copy of a search warrant be given to the person, that's exactly what [the officer] did: put it in [appellant's] property at the jail. I mean, that's where your stuff goes. It's not like the defendant has got a nightstand in the drunk tank at the jail. His stuff is kept in his property, and that's what happened here.

The jury charge did not contain any instructions regarding the validity of search warrants or the requirements of article 18.06(b). However, appellant did not complain about the lack of such an instruction either at trial or on appeal.

## LIMITATION ON ARGUMENT

In his sole issue on appeal, appellant contends that "[t]he trial court abused its discretion in limiting trial counsel's closing argument during the guilt phase of the trial, effectively denying Appellant assistance of counsel." Specifically, appellant argues that his "defense focused on the law regarding search warrants and whether the trooper had followed the law," but "[b]ecause the trial court did not permit Appellant's attorney to argue that law during closing argument, Appellant was deprived of counsel."

6

*Standard of Review and Applicable Law*

We review the trial court's ruling on the State's objection to a defendant's jury argument for abuse of discretion. *See Davis v. State*, 329 S.W.3d 798, 825 (Tex. Crim. App. 2010). The trial court has broad discretion in controlling the scope of closing argument, but it may not prevent defense counsel from making a point essential to the defense. *Wilson v. State*, 473 S.W.3d 889, 902 (Tex. App.—Houston [1st Dist.] 2015, pet. filed). A defendant has the right to argue any theory supported by the evidence and may make all inferences from the evidence that are legal, fair, and legitimate. *Id.*; *Melendez v. State*, 4 S.W.3d 437, 442 (Tex. App.—Houston [1st Dist.] 1999, no pet.).

Counsel is entitled to correctly argue the law, even if the law is not included in the jury charge. *State v. Renteria*, 977 S.W.2d 606, 608 (Tex. Crim. App. 1998). Prohibiting defense counsel from making a particular jury argument when counsel is entitled to do so is a denial of the defendant's right to counsel. *Wilson*, 473 S.W.3d at 902.

*Analysis*

We agree that appellant should be able to argue law applicable to his case, even if that law is not included in the charge. *See Renteria*, 977 S.W.2d at 608 ("[T]here is no error in *correctly* arguing the law, even if the law is not included in the court's charge") (emphasis added). However, even if we were to conclude that

7

the trial court erred in limiting appellant's argument, which we do not,[4] we would

nonetheless find that the error was harmless.

Because a trial court's improper denial of a jury argument counsel is permitted

to make is a denial of the right to counsel, it is constitutional error, subject to harm

analysis under Rule of Appellate Procedure 44.2(a). TEX. R. APP. P. 44.2(a); *Wilson*,

473 S.W.3d at 902; *Lemos v. State*, 130 S.W.3d 888, 892 (Tex. App.—El Paso 2004,

no pet.). Under Rule 44.2(a), an appellate court "must reverse a judgment of

conviction or punishment unless the court determines beyond a reasonable doubt

that the error did not contribute to the conviction or punishment." TEX. R. APP. P.

44.2(a); *Wilson*, 473 S.W.3d at 902. In applying the harmless-error test, the primary

question is whether there is a "reasonable possibility" that the error might have

contributed to the conviction or punishment. *Mosley v. State*, 983 S.W.2d 249, 259

(Tex. Crim. App. 1998); *Wilson*, 473 S.W.3d at 902; *see Johnson v. State*, 660

S.W.2d 536, 538 (Tex. Crim. App. 1983) (noting that under predecessor to current

constitutional-harmless-error analysis, primary question was whether there is a

---

[4]     The failure to provide a copy of a warrant and other ministerial violations of article 18.06 do not vitiate a warrant absent a showing of prejudice by the defendant. *See Greene v. State*, 358 S.W.3d 752, 758 (Tex. App.—Fort Worth 2011, pet. ref'd); *Robles v. State*, 711 S.W.2d 752, 753 (Tex. App.—San Antonio 1986, pet. ref'd). Likewise, article 18.06(b) is not law of the case that is required to be included in a jury charge absent a showing of prejudice. *Hernandez v. State*, No. 13-16-00651-CR, 2018 WL 2440529, at *3 (Tex. App.—Corpus Christi 2018, pet. ref'd).  In this case, there was no evidence that appellant was prejudiced by the officer's failure to provide appellant with a copy of the search warrant rather than leaving it in his possessions.

reasonable possibility that the error might have "contributed to the conviction or affected the punishment assessed").

In conducting our harmless-error analysis, we do not focus on the propriety of the outcome of the trial, but instead "calculate as much as possible the probable impact of the error on the jury in light of the existence of other evidence." *Wesbrook v. State*, 29 S.W.3d 103, 119 (Tex. Crim. App. 2000). We must evaluate the record in a neutral, impartial, and even-handed manner, not in the light most favorable to the prosecution. *Cantu v. State*, 395 S.W.3d 202, 211 (Tex. App.—-Houston [1st Dist.] 2012, pet. ref'd). We consider the nature of the error, the extent to which it was emphasized by the State, its collateral implications, and the weight a jury would likely assign it. *Cantu*, 395 S.W.3d at 211; *Snowden v. State*, 353 S.W.3d 815, 822 (Tex. Crim. App. 2011). These factors are not exclusive, and other considerations may inform our harm analysis. *Cantu*, 395 S.W.3d at 211. "At bottom, an analysis for whether a particular constitutional error is harmless should take into account any and every circumstance apparent in the record that logically informs an appellate determination whether 'beyond a reasonable doubt [that particular] error did not contribute to the conviction or punishment.'" *Snowden*, 353 S.W.3d at 822 (alteration in original) (quoting TEX. R. APP. P. 44.2(a)).

In *Vasquez v. State*, this Court held that the trial court erred by not permitting the defendant's counsel to discuss the law applicable to registered sex offenders

during closing argument, even though that law was not included in the jury charge. 484 S.W.3d 526, 531–33 (Tex. App.—Houston [1st Dist.] 2016, no pet.).  However, we held that the error was harmless "[b]ecause Vasquez's counsel conveyed to the jury the substantive argument that Vasquez would be subject to sex offender registration requirements[.]" *Id.* at 532. In so holding, we noted that "an appellate court may consider the extent to which the defendant communicated his argument despite the trial court's rulings." *Id.* at 533.

In this case, as in *Vasquez*, appellant was able to communicate his argument that the search warrant was invalid despite the trial court's initial adverse ruling. Specifically, appellant's counsel argued that "[the trooper] could have handed [appellant] the search warrant. His—that's all he had to do. He's saying, 'Search warrant.' That's all he had to do. And, instead, didn't do it, so" . . . "we're asking you to look at that drawing of blood. It's there for a reason that the search warrant has to be given to you."  Appellant further argued, "Should the trooper have given him a copy of the subpoena search warrant? Yeah. And if he should have and he didn't, then follow Paragraph 5. You can disregard the blood and the results thereof."

And, when the State re-urged its earlier objection, the trial court overruled it and allowed the argument.  Because the trial court's initial ruling did not prevent appellant from communicating his argument to the jury, error, if any, was harmless. *See Vasquez*, 484 S.W.3d at 533.

10

We overrule appellant's sole issue on appeal.

## CONCLUSION

We affirm the trial court's judgment.

Sherry Radack
Chief Justice

Panel consists of Chief Justice Radack and Justices Higley and Hightower.

Do not publish.  TEX. R. APP. P. 47.2(b).