UNITED STATES of America,
Plaintiff,

v.

Maria ALVARADO–TORRES,
Defendant.

No. Crim. 98–3351–R.

United States District Court,
S.D. California.

April 19, 1999.

Paul C. Johnson, Jr., Mary Kathryn Kelley, Office of the U.S. Attorney, San Diego, CA, for plaintiff.

Mark S. Windsor, Guadalupe M. Valencia, Federal Defenders of San Diego, San Diego, CA, for defendant.

## AMENDED ORDER DENYING MOTIONS TO SUPPRESS STATEMENTS AND DISMISS INDICTMENT FOR VIOLATIONS OF THE VIENNA CONVENTION

RHOADES, District Judge.

### I. Overview.

This matter is before the Court on Defendant's motions (1) to suppress her statements and (2) to dismiss the indictment, because she was not informed of her rights under the Vienna Convention on Consular Relations. For the reasons explained in this order, the motions are DENIED.

### II. Background.[1]

On October 24, 1998, Maria Alvarado Torres ("Defendant") drove a 1980 Dodge Diplomat from Mexico to the Calexico Port of Entry. At primary inspection, a narcotic detector dog alerted agents to Defendant's car. Defendant was referred to secondary inspection.

At secondary inspection, Defendant gave a negative customs declaration to Customs Inspector Alfred Garcia. In his initial inspection of the vehicle, Inspector Garcia noticed packages in the dashboard and rear quarter panels. Further inspection of the vehicle revealed 130.3 pounds of a green, leafy substance which field-tested positive for marijuana.

Agents thereafter placed Defendant under arrest and informed her, in Spanish, of her Miranda rights. She agreed to waive those rights and speak with the agents. At no time, however, did agents ask Defendant whether she wished for them to notify the Mexican Consulate of her arrest. Thereafter, upon being questioned, Defendant proceeded to make some incriminating and inconsistent statements. When confronted with those inconsistencies, Defendant invoked her right to an attorney and the questioning ceased. On November 18, 1998, a federal grand jury returned a two count indictment against Defendant, charging her with one count of importing marijuana in violation of 21 U.S.C. §§ 952 and 960, and one count of possession with intent to distribute in violation of 21 U.S.C. § 841(a)(1).

On December 28, 1998, Defendant filed a motion to suppress her post-arrest statements, contending that her interrogation was involuntary and that it violated her rights under Miranda. After holding a hearing, the Court denied the motion on February 22, 1999, finding that Defendant voluntarily made the statements and that she had knowingly waived her Miranda rights before speaking with agents.

Defendant has since filed an additional motion to suppress, as well as a motion to dismiss the indictment, contending that the interrogation violated her rights under the Vienna Convention on Consular Relations ("Vienna Convention" or "Convention"). To support these motions, Defendant has filed an affidavit alleging that had agents advised her of her right to contact the Mexican Consul, she would have availed herself of that right. (See Alvarado–Torres Decl. ¶ 3.) Furthermore, she alleges that had the consular officials advised her not to answer questions, that she would have indeed invoked her right to remain silent and would not have answered the agents' questions. (See id. ¶ 4.) To further support her motions, Defendant has submitted a declaration from the Consul General of the Mexican Consulate in San Diego, executed on April 30, 1998, in which he alleges that when such defendants contact his office, consulate officials advise

---

1. The Court takes the following statement of facts from the parties' briefs. The Court expresses no view on the accuracy of those facts.

them to remain silent. (*See* Herrera–Lasso Decl. ¶ 7.)[2] Defendant has also submitted a similar declaration by the Consul of the Mexican Consulate in Calexico, California, in which the Consul specifically states that had Defendant contacted her office, a consulate representative would have assisted her at once and "instructed her not to submit to interrogation." (*See* Torregrosa Decl. ¶ 6.)

In her motions, Defendant thus argues that her right to be informed of her right to contact the consul is analogous to her *Miranda* right to be informed of her right to contact an attorney. Therefore, Defendant argues that just as a violation of *Miranda* requires the Court to suppress her statements, so too does a violation of the Vienna Convention. Similarly, Defendant argues that these errors require dismissal of the indictment.

## III. Discussion.

### A. Article 36 of the Vienna Convention.

The United Nations adopted the Vienna Convention in April 1963, and the United States later ratified the Convention in 1969.[3] *See* Vienna Convention on Consular Relations, April 24, 1963, 21 U.S.T. 77, T.I.A.S. No. 6820 (hereinafter *Convention*). In adopting such an agreement, the Convention's ratifiers recognized that "an international convention on consular relations, privileges and immunities would . . . contribute to the development of friendly relations among nations, irrespective of their differing constitutional and social systems." *Id.*, pmbl. Thus, with this goal in mind, the Convention provides rules governing the establishment of consular relations, defining a consulate's functions in a receiving nation. *Id.*, arts. 2–5.

In the present case, the Court's inquiry concerns Article 36 of the Convention. That particular article provides:

1. With a view to facilitating the exercise of consular functions relating to nationals of the sending State:

(a) consular officers shall be free to communicate with nationals of the sending State and to have access to them . . .;

(b) if he so requests, the competent authorities of the receiving State shall, without delay, inform the consular post of the sending State if, within its consular district, a national of that State is arrested. . . . The said authorities shall inform the person concerned without delay of his rights under this sub-paragraph;

(c) consular officers shall have the right to visit a national of the sending State who is in prison, custody or detention, to converse and correspond with him and to arrange for his legal representation. . . .

*Convention*, art. 36. Thus, Article 36 "requires an arresting government to notify a

2. The Consul General executed the declaration for use in the prior case of *United States v. Mariscal–Esparza*, 97–CR–3148–H. The Government has urged the Court not to consider the declaration on relevancy grounds, arguing that (1) the declaration was issued approximately seven months prior to the present Defendant's October 1998 arrest; and (2) the present Defendant would have attempted to contact the consulate in Calexico where she was arrested, not the consulate in San Diego. (*See* Gov.'s Opp'n at 7.) Notwithstanding the Government's objections, however, the Court will not refuse to consider the declaration on relevancy grounds.

3. Because the Vienna Convention is a treaty made under the authority of the United States, it is supreme law of the land pursuant to Article VI, clause 2 of the U.S. Constitution. *See U.S. v. Lombera–Camorlinga*, 170 F.3d 1241 (9th Cir.1999). Furthermore, as law of the land, courts must give a treaty the same consideration as a federal statute. *See Whitney v. Robertson*, 124 U.S. 190, 194, 8 S.Ct. 456, 31 L.Ed. 386 (1888) ("By the Constitution a treaty is placed on the same footing, and made of like obligation, with an act of legislation. . . ."); *Head Money Cases*, 112 U.S. 580, 598, 5 S.Ct. 247, 28 L.Ed. 798 (1884) ("A treaty . . . is a law of the land as [is] an act of Congress. . . .").

foreign national who has been arrested ... of his right to contact his consul." *Faulder v. Johnson*, 81 F.3d 515, 520 (5th Cir. 1996).[4] The Ninth Circuit has recently determined that Article 36 creates individual rights which an aggrieved foreign national has standing to enforce. *See U.S. v. Lombera–Camorlinga*, 170 F.3d 1241 (9th Cir.1999). Thus, should the United States fail to inform a foreign national of his rights under Article 36, that national has standing to enforce those rights in federal court.[5] *See id.* Moreover, in so holding, the Ninth Circuit suggested that an arrested national could properly enforce these rights by moving, pretrial, to suppress statements made to his arresting officers on the grounds that he was not first advised of his right to contact the consul for assistance. *See id.* at 1242 (noting that "[b]y raising his claim in a pretrial suppression motion, the appellant exercised

his rights under the Convention in conformity with our laws").

■ In so holding, however, the court did not find failure to inform a national of his Article 36 rights to be tantamount to fatal error, requiring that his statements be automatically suppressed.[6] Rather, to be entitled to any sort of relief, the court emphasized that the national must first show that agents' failure to inform him of his right to contact the consul caused him prejudice. In articulating such a rule, the court stated:

> Upon a showing that the Vienna Convention was violated by a failure to inform the alien of his right to contact his consulate, the defendant in a criminal proceeding has the initial burden of producing evidence showing prejudice from the violation of the Convention. If the defendant

4. Article 36 requires that foreign nationals must always be informed of their right to contact their consul. In most cases, the foreign national then has the option as to whether or not to have officers contact the consulate and inform it of his arrest. However, some parties to the treaty are "mandatory notification countries," meaning that officers must notify the consulate of a national's arrest regardless of his wishes. Because Mexico is not a "mandatory notification country," the Mexican Consulate is notified of a national's arrest only if the national chooses to have it notified. *See* U.S. Department of State, *Consular Notification and Access*, at 5, 13.

5. In holding that the Convention confers individual rights, the Ninth Circuit followed the lead of other courts which implicitly suggested that individuals have standing to enforce Article 36. *See, e.g., Breard v. Greene*, 523 U.S. 371, 118 S.Ct. 1352, 140 L.Ed.2d 529 (1998) (per curiam) (denying certiorari on a claim of a violation of the Convention without discussing the standing issue, but stating that the Convention "arguably confers on an individual the right to consular assistance following arrest"); *Villafuerte v. Stewart*, 142 F.3d 1124 (9th Cir.1998) (entertaining a claim of a violation of the Convention without discussing the standing issue); *Faulder*, 81 F.3d at 520 (same); *United States v. Esparza–Ponce*, 7 F.Supp.2d 1084, 1096 (S.D.Cal.1998) (discussing cases regarding standing but declining to resolve "muddled" issue); *Mami v. Van*

*Zandt*, No. 89–CIV–0554 (TPG), 1989 WL 52308, at *1 (S.D.N.Y. May 9, 1989); *see also* Mark J. Kadish, *Article 36 of the Vienna Convention on Consular Relations: A Search for the Right to Consul*, 18 Mich.J. Int'l L. 565, 589–603 (1997) (arguing that the Convention confers enforceable individual rights). *But see Paraguay v. Allen*, 949 F.Supp. 1269, 1274 (E.D.Va.1996) (suggesting that the Convention does not confer private enforceable rights), *aff'd*, 134 F.3d 622 (4th Cir.1998).

6. Furthermore, the Court notes that the Ninth Circuit did not expressly authorize the suppression remedy in *Lombera–Camorlinga*. As stated, in that case, the court held that a foreign national has standing to assert violations of the Convention, recognizing that he could properly attempt to do so through a pretrial suppression motion. *See* 170 F.3d at 1243.

However, because the district court failed to inquire into whether such violations had prejudiced the defendant, the court remanded the case, instructing the district court to make such a determination. *See id.* Thus, because this preliminary determination had not yet been made, the court did not expressly discuss whether, assuming the defendant could demonstrate prejudice, suppression would be the appropriate remedy. Without such express guidance, this Court declines to read the Ninth Circuit's decision as implicitly suggesting such a drastic remedy.

meets that burden, it is up to the government to rebut the showing of prejudice. *Id.*

■ Thus, in the present case, the agents' failure to inform Defendant of her right to contact the consul does not automatically require that her statements be suppressed. Rather, as explained, Defendant must demonstrate that she has suffered some kind of cognizable prejudice.

### B. Agents' Failure to Inform Defendant of Her Right to Contact the Consul Did Not Prejudice Her.

■ In considering what exactly constitutes "prejudice," the Court looks to the Ninth Circuit's decision in *United States v. Villa–Fabela* for guidance. 882 F.2d 434, 440 (9th Cir.1989), *overruled on other grounds by United States v. Proa–Tovar,* 975 F.2d 592, 594–95 (9th Cir.1992) (en banc). In *Villa–Fabela,* a foreign national challenged his conviction for illegal reentry after deportation, arguing that the Immigration and Naturalization Service failed to inform him of his right to contact the consulate for assistance during his prior deportation hearing. In articulating the degree of prejudice the alien needed to show, the Ninth Circuit stated: "To establish prejudice, the defendant must produce evidence that 1) he did not know of his right; 2) he would have availed himself of the right had he known of it; and 3) there was a likelihood that the contact [with the consul] would have resulted in assistance to him. . . ." *Id.* (internal quotation marks and citation omitted).

Applying these factors to the present case, the Court concludes that Defendant has failed to demonstrate prejudice from the agents' failure to advise her of her right to contact the consul.

### 1. Defendant was fully informed of her Miranda rights, which she waived.

While agents may not have informed Defendant of her rights under the Vienna Convention, they did inform Defendant of her *Miranda* rights, which she subsequently waived. Therefore, the consular official's advisal of virtually the same rights—the right to remain silent and the right to contact an attorney—would have been cumulative.[7] *Cf. Faulder v. Johnson,* 81 F.3d at 520 (Canadian government's failure to obtain case-related information for an arrested foreign national, as required by the Convention, did not require reversal since the information was the same as that which defense counsel could have obtained). Moreover, the fact that Defendant invoked her right to remain silent once she suspected that she was making incriminating statements strongly suggests that she fully understood the scope of those *Miranda* rights. Thus, because agents informed Defendant of her *Miranda* rights, which she fully understood, Defendant cannot establish prejudice on the grounds that the consul did not readvise her of virtually the same rights.[8]

Moreover, the Ninth Circuit has instructed that a defendant cannot establish

---

7. In their declarations, the consular officials both allege that their representatives would have informed Defendant "to request a lawyer, to remain silent, and to refuse to answer any questions (other than routine background information) without the presence and assistance of counsel." (Herrera–Lasso Decl. ¶ 7; Torregrosa Decl. ¶ 6.) Thus, in providing this advice, a consular representative would have readvised Defendant of virtually the same rights conveyed by the *Miranda* warnings. To the extent that Defendant argues that she was also entitled to be advised that she *should* remain silent and *should* consult with an at-

torney, Defendant seeks extra-Constitutional rights not afforded American citizens.

8. *See* James A. Deeken, Note, *A New Miranda for Foreign Nationals? The Impact of Federalism on International Treaties that Place Affirmative Obligations on State Governments in the Wake of Printz v. United States,* 31 Vand.J. Transnat'l L. 997, 1028 (1998) (noting that "if a consulate makes contact with an arrested alien of his country after questioning, it is hard to see how an alien is prejudiced since Miranda lays down broad, sweeping protections that all individuals in custody enjoy").

prejudice from an officer's failure to notify another if the defendant understood, and voluntarily waived, his *Miranda* rights. In *Harris v. Wright*, 93 F.3d 581, 586 (9th Cir.1996), the defendant sought to suppress statements made to officers after he had been arrested, arguing that the officers had intentionally failed to notify his parents of his arrest. The court, however, rejected defendant's argument that this failure to notify violated due process, noting that "an interrogation can have no effect on a person's liberty without his consent." *Id.* Thus, because the defendant voluntarily waived his *Miranda* rights and chose to speak with officers, the court refused to suppress his statements because of the failure to notify his parents of his arrest.

Similarly, in the present case, Defendant cannot establish prejudice from the agents' failure to inform the consul of her arrest. As stated, agents fully informed Defendant of her *Miranda* rights, which she voluntarily waived. Thus, because she was fully informed of her rights, she cannot establish prejudice from the agents' failure to contact the Mexican Consulate on her behalf.

## 2. The Convention did not require agents to delay their interrogation before notifying the consulate.

■ In claiming prejudice, Defendant does not merely allege that she was not informed of her *Miranda* rights; rather, Defendant contends that she was prejudiced because the Mexican Consulate did not *assist* her in deciding whether she should exercise those rights. However, Defendant cannot claim prejudice because

of the Mexican Consulate's failure to assist her.

First, the Convention does not confer upon foreign nationals the right to speak with a consular representative before agents begin interrogation. Rather, the Convention merely states that agents must notify a national "without delay" of his right to contact the consul. *Convention,* art. 36. Interpreting this time restriction, the State Department instructs that "without delay" means that "notification should occur as soon as reasonably possible under the circumstances." *See* U.S. Department of State, *Consular Notification and Access,* at 20.[9] Thus, the State Department indicates that officials comply with this requirement by notifying a foreign national of his right to contact the consul before he is booked for detention. *See id.*

Furthermore, even if the foreign national requests to contact the consul after being arrested, the Convention does not require that officers delay their interrogation until they have done so. Again, the State Department indicates that officers must contact the consul "as soon as reasonably possible under the circumstances," indicating that officers would comply with the Convention by contacting the consulate within 24 hours, or even as late as 72 hours, of the foreign national's request. *See id.* Furthermore, the State Department notes that the Convention does not require that the consul be notified outside of its regular working hours. *See id.* Thus, nothing in the Convention requires officers to delay an interrogation even if a foreign national requests that officers notify the consul of his arrest.[10]

9. While the State Department's interpretation of the Convention's provisions may not be dispositive, they are entitled to this Court's deference. *See Sumitomo Shoji America, Inc. v. Avagliano,* 457 U.S. 176, 184–85, 102 S.Ct. 2374, 72 L.Ed.2d 765 (1982); *Kolovrat v. Oregon,* 366 U.S. 187, 194, 81 S.Ct. 922, 6 L.Ed.2d 218 (1961); *Kim v. District Director,* 586 F.2d 713, 715–16 (9th Cir.1978).

For ease of reference, the Court notes that a copy of the State Department's guidelines can

be found on the World Wide Web at http:øøwww.state.gov.

10. Even assuming that the Convention required agents to delay their interrogation until a consular representative could render assistance, the Court has concerns as to whether the Mexican Consulate could, as a practical matter, respond to all of their nationals' requests within a reasonable time. According to the Performance Analysis Sys-

In the present case, agents placed Defendant in custody on a Saturday evening after arresting her on drug-smuggling charges, and at that time, the Mexican Consulate was closed for the weekend. (*See* Gomez Decl. ¶ 2.) [11] Thus, even had Defendant requested that the agents contact the consul after being arrested, the agents would have fully complied with the Convention by continuing with their interrogation and contacting the consul the following Monday. Thus, Defendant cannot establish that she was prejudiced by the agents' failure to inform her of her right to contact the consul.

tem—an internal database utilized by the Immigration and Naturalization Service—approximately 479,532 aliens were apprehended in San Diego and Imperial Counties during FY'98. Thus, according to these numbers, approximately 1313 aliens were apprehended in these counties each day. In reaching this average, the Court recognizes that not all of the aliens apprehended were Mexican nationals. Furthermore, the Court acknowledges the rudimentary nature of its "average," noting that during certain periods of the year, there tend to be fewer border crossings.

Nevertheless, these numbers illustrate the considerable number of Mexican nationals apprehended in San Diego and Imperial Counties each day. The Consul General of the Mexican Consulate in San Diego—Mexico's second-largest consulate in the United States—maintains a staff of forty persons, only three of whom are lawyers. (*See* Herrera–Lasso Decl. ¶ 2.) Even if all forty of these staffers assisted nationals full-time—and were aided in this task by staffers from the consulate's office in Calexico, California—these large numbers suggest that the consulate might have serious difficulty responding to all of the requests for assistance within a reasonable time. These practical problems aside, however, the Court emphasizes that its finding that Defendant has failed to establish prejudice rests upon the reasons stated in Part III.B., sections 1–3 of its order.

11. An official from the Mexican Consulate in Calexico, California informed AUSA Gomez that its operating hours are from 8:00 a.m. to 5:00 p.m., Monday through Friday. (*See,* Gomez Decl. ¶ 2.b.) A representative from that consulate has also indicated, however, that its representatives are available twenty-four hours per day, seven days a week and can be

### 3. Even had the agents delayed their interrogation until a consular representative arrived, that representative could not have rendered legal advice.

■ As stated, although she knowingly waived her *Miranda* rights after being informed of them, Defendant contends that she was prejudiced because the Mexican Consulate did not *assist* her in determining whether she should exercise those rights.[12] However, even assuming that a consular representative had appeared to assist Defendant, that representative could not have given Defendant any legal assis-

reached by beeper. (*See* Torregrosa Decl. ¶ 3.)

12. As stated, to support her claim of prejudice, Defendant has submitted declarations from officials in the Mexican Consulate in both San Diego and Calexico, who have asserted that consular representatives from their offices would have assisted Defendant had they been contacted. (*See* Herrera–Lasso Decl. ¶ 7; Torregrosa Decl. ¶ 6.) The Government, however, urges the Court not to consider these declarations since, citing diplomatic immunity, no member of the Mexican Consulate would appear in Court, thus denying the Government the right to conduct cross-examination. *See Convention,* art. 44 (immunity protects consular representatives from having to testify as to the exercise of their duties).

The Court recognizes that it may prohibit a criminal defendant from calling a witness to testify if that witness will invoke his Fifth Amendment rights and refuse to submit to cross-examination. *See United States v. Klinger,* 128 F.3d 705, 709 (9th Cir.1997); *Denham v. Deeds,* 954 F.2d 1501, 1504 (9th Cir.1992). In articulating such a rule, the Ninth Circuit properly recognizes that, insulated from cross-examination, a witness' testimony "cannot be considered reliable." *Denham,* 954 F.2d at 1504.

In light of this precedent, the Court understands that accepting the untested statements in the declarations as true would deny the Government a significant right of cross-examination. Nevertheless, the Court emphasizes that, in finding that Defendant has failed to establish prejudice, the Court has not considered the alleged truth or falsity of the statements made in the declarations. Rather, the Court concludes that Defendant has failed to establish prejudice for the reasons stated in Part III.B., sections 1–3.

tance. As stated, Article 36 gives consular officials the right to have access to a detained national and "*arrange* for his legal representation." *Convention*, art. 36(1)(c) (emphasis added). Thus, by its express terms, the Convention does not authorize consular officials to render any kind of legal assistance. The State Department makes this point even more clear in its booklet, answering "frequently asked questions" regarding the Convention:

Q. How is a consular officer different from legal "counsel?"

A. The term "consul" should not be confused with "counsel," which means an attorney-at-law authorized to provide legal counsel and advice.

*Consular Notification and Access*, at 17. In another portion of its guidelines, the State Department further emphasizes this distinction, stating that under the Convention "consular officers may not act as attorneys for their nationals." *Id.* at 15. Thus, because the Convention bars consular representatives from rendering any kind of legal assistance, Defendant cannot claim prejudice on the grounds that the Mexican Consulate did not assist her in determining whether to waive her *Miranda* rights.

Even assuming that a consular representative had attempted to render legal advice, such actions would clearly violate the terms of the Convention. Article 36 expressly states that a consular representative must exercise his rights under the Convention "in conformity with the laws and regulations of the receiving State." *Convention*, art. 36(2). While the term "receiving State" clearly refers to the United States, the Court· notes that in California, like all other states in the Union, a person must be licensed to practice law. *See* Cal.Bus. & Prof.Code §§ 6060 *et seq.* (West 1990). Furthermore, as the State Department's guidelines confirm, "[c]onsular officers are not entitled to practice law in the United States." *Consular Notification and Access*, at 22. Thus, because consular representatives are not licensed to practice law in California, their rendering legal assistance would violate California state law, as well as the Convention.

Of course, Defendant will likely claim prejudice by the fact that a consular representative could have assisted her in obtaining counsel, and that *that* person could have advised her to remain silent. However, as stated previously, the Convention does not require agents to delay their interrogation until the consulate has been notified and has sent a representative to render assistance. Following this reasoning, the Convention cannot possibly require that agents delay their interrogation until: (1) they contact the consul; (2) the consulate representative arrives; (3) the consulate representative recommends and contacts an attorney; *and* (4) that recommended attorney arrives to render assistance.

In sum, Defendant has not demonstrated that she was prejudiced by the agents' failure to inform her of her right to contact the consul. Rather, in attempting to satisfy her burden, Defendant has relied upon a chain of faulty and insupportable premises. As stated, agents adequately informed Defendant of her *Miranda*·rights, which she waived. Moreover, even assuming that the *Miranda* advisal was not sufficient to convey her rights, the Convention did not require agents to delay their questioning until a representative from the consulate arrived. Furthermore, even assuming that the Convention did require the agents to delay their interrogation, a consular representative could not have rendered any legal assistance to Defendant. Thus, Defendant has not demonstrated that the agents' failure to inform her of her Article 36 rights caused her any prejudice.

## C. Suppression of Defendant's Statements is not the Appropriate Remedy.

■ Even assuming that Defendant were able to establish prejudice, this Court does not believe that suppression of her

statements would be the appropriate remedy. Courts have long recognized that the exclusionary rule was created to redress violations of an individual's Constitutional rights—specifically, those rights guaranteed by the Fourth, Fifth, and Sixth Amendments. *See Massiah v. United States,* 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964) (Sixth Amendment); *Mapp v. Ohio,* 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961) (Fourth Amendment); *Bram v. United States,* 168 U.S. 532, 18 S.Ct. 183, 42 L.Ed. 568 (1897) (Fifth Amendment). Furthermore, an officer's violation of a statute generally does not require suppression, unless the statute expressly provides for such a remedy. *See United States v. Chaparro–Alcantara,* 37 F.Supp.2d. 1122 (C.D.Ill.1999).

In the present case, the Vienna Convention does not create any fundamental, Constitutional rights. *See Murphy v. Netherland,* 116 F.3d 97, 100 (4th Cir.) (emphasizing that while the Convention might create individual rights, "it certainly does not create *constitutional* rights") (emphasis in original), *cert. denied,* 521 U.S. 1144, 118 S.Ct. 26, 138 L.Ed.2d 1050 (1997); *Waldron v. I.N.S.,* 17 F.3d 511, 518 (2d Cir.1993) (finding that the right to communicate with consular officials, enumerated in the Convention, did not create any fundamental Constitutional right); *United States v. Esparza–Ponce,* 7 F.Supp.2d 1084, 1097 (S.D.Cal.1998) (holding that a violation of the Convention does not rise to the level of a *Miranda* violation). As a result, if the remedy of suppression is to be available, the Convention must expressly provide for that remedy. After reviewing its Articles, however, this Court finds nothing in the Convention's text that suggests that the Court should apply the exclusionary rule to remedy a violation. *See also Chaparro–Alcantara,* 37 F.Supp.2d 1122, 1124.

Furthermore, policy considerations also militate against applying the exclusionary rule as a remedy. As the Supreme Court has recognized, "the exclusionary rule imposes a substantial cost on the societal interest in law enforcement by its proscription of what concededly is relevant evidence." *Colorado v. Connelly,* 479 U.S. 157, 166, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986) (citations omitted). Given this fact, such a drastic remedy should only be employed to protect fundamental Constitutional values. As another court aptly noted in refusing to suppress statements for Vienna Convention violations:

> The exclusionary rule is designed to protect core constitutional values; it should only be employed when those values are implicated. A convention or treaty signed by the United States does not alter or add to our Constitution. Such international agreements are important and are entitled to enforcement, as written, but they are not the bedrock and foundation of our essential liberties and accordingly should not be cloaked with the "nontextual and unprecedented remedy" that protects those liberties.

*United States v. $69,530.00 in U.S. Currency,* 22 F.Supp.2d 593, 595 (W.D.Tex. 1998) (footnote omitted). This Court agrees and further emphasizes that it is unaware of *any* court that has suppressed statements for violations of the Convention. Thus, because the Convention does not implicate fundamental Constitutional rights, nor does it expressly provide for the remedy of suppression, this Court holds that suppression is not an appropriate remedy for its violation.[13]

---

13. In so holding, the Court does not intend to minimize the Government's violation of the Convention, as such a violation gravely troubles the Court, as it has other courts. *See, e.g., Faulder,* 81 F.3d at 520 (stating that the court "in no way approve[s] of [the state's] failure to advise" the defendant of his Convention rights).

The United States should abide by its treaty obligations. As the Secretary of State has observed, if the United States fails to inform arrested aliens of their Convention rights, then other nations may not inform arrested American citizens of their right to contact the American consul. *See* Brooke A. Masters & Joan Biskupic, *Killer Executed Despite Pleas;*

## D. Dismissal of the Indictment is not an Appropriate Remedy.

 In addition to seeking to suppress her statements, Defendant alternatively moves to dismiss the indictment. In proffering such an argument, Defendant relies upon two prior decisions of the Ninth Circuit—*United States v. Calderon–Medina*, 591 F.2d 529 (9th Cir.1979), and *United States v. Rangel–Gonzales*, 617 F.2d 529 (9th Cir.1980)—in which the Ninth Circuit stated that a foreign national could seek to dismiss an indictment for illegal reentry if he could establish prejudice from not being advised of his right to contact his consul at the prior deportation hearing.

In light of this precedent, the Court denies Defendant's motion to dismiss the indictment. First, as discussed previously, Defendant has failed to establish prejudice from the agents' failure to inform her of her right to contact the consul. Second, the Ninth Circuit decisions upon which Defendant relies are inapposite to the present case. In those prior Ninth Circuit decisions, the defendants were charged with illegal reentry, a crime which requires that there be a valid, prior deportation. *See* 8 U.S.C. § 1326. Thus, by claiming prejudice from agents' failure to inform them of their right to contact the consul for assistance, defendants could establish that there was not a valid, prior deportation and effectively nullify a required element of the offense.

In the present case, however, Defendant is charged—not with illegal reentry—but with importation of marijuana and possession with intent to distribute. Unlike a charge of illegal reentry, agents' failure to advise Defendant of her right to contact the consul cannot possibly "nullify" an element of the crimes charged. Furthermore, outside of the context of illegal reentry, this Court is not aware of any decision in which the Ninth Circuit has suggested that dismissal of the indictment would provide an appropriate remedy for a violation of the Vienna Convention. Accordingly, the Court denies Defendant's motion.

## IV. Conclusion.

For the reasons stated, the Court DENIES Defendant's motions to suppress and to dismiss the indictment for violations of the Vienna Convention.

IT IS SO ORDERED:

*World Tribunal, State Department had Urged Delay*, Wash. Post., Apr. 15, 1998, at B1 (discussing a letter written by the Secretary of State to the governor of Virginia urging him to stay the execution of a defendant whose Convention rights had been violated).

It appears that under international law, however, when a nation violates the Convention, "the only consequence is that apologies are presented by the government responsible. . . ." *Case Concerning the Vienna Convention on Consular Relations* (Para. v. U.S.) (I.C.J.) (Order for Provisional Measures of Apr. 9, 1998). If the Vienna Convention does not expressly provide for a remedy, however, it is not the proper role of this Court to "connect the dots" and thus create one.