UNITED STATES of America

v.

Jose Paz MORENO, Defendant.

No. Crim. 00–376–A.

United States District Court,
E.D. Virginia,
Alexandria Division.

Nov. 30, 2000.

Kenneth W. Gaul, U.S. Attorney's Office, Alexandria, VA, for U.S.

John C. Kiyonaga, Kiyonaga and Kiyonaga, Alexandria, VA, for defendant.

## MEMORANDUM OPINION

ELLIS, District Judge.

Defendant's motion to suppress in this prosecution for unlawful reentry after deportation presents the following questions:

1. Whether defendant's waiver of his *Miranda*[1] rights in the course of his interview with Immigration and Naturalization Service ("INS") Special Agent Blair Witting was knowing and voluntary;

2. Whether defendant's Sixth Amendment right to counsel was violated given that, at the time of the interview, defendant was represented by counsel with respect to a separate and distinct charge; and

3. Whether the interview of the defendant violated defendant's rights under the Vienna Convention on Consular Relations, April 24, 1963, 21 U.S.T. 77, 101 ("Vienna Convention"), given that defendant was not advised of his right to confer with his consulate prior to the interview.

---

**1.** *See Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

**2.** A complaint and arrest warrant for defendant issued on May 15, 2000, but the warrant

## I

Defendant, a citizen of El Salvador, is charged with unlawful reentry by an aggravated felon after deportation, in violation of 8 U.S.C. §§ 1325(a) and (b)(2). Defendant entered the United States illegally on or about January 5, 1985. He pled guilty to rape in Arlington County Circuit Court on September 20, 1989. He was also convicted of two charges of statutory rape in a jury trial in Arlington County Circuit Court on December 1, 1992. After serving his sentences, defendant was deported on May 21, 1996. He reentered the United States illegally some time during 1998. In November 1999, defendant was arrested in Arlington County for driving under the influence and forging public records. Thereafter, he was arrested again on December 27, 1999 for possession of cocaine. He pled guilty to the cocaine charge and was sentenced to 12 months imprisonment.

On September 22, 2000, while still incarcerated on the Arlington cocaine possession charge and prior to defendant's arrest or indictment on the unlawful reentry charge, Agent Witting interviewed the defendant in the Arlington County Jail.[2] At that time, defendant, a native Spanish speaker, was advised of his *Miranda* rights in English, after which he signed a written acknowledgment of rights waiver form, and gave a statement memorialized in Agent Witting's writing, which was then signed by defendant. Defendant seeks to suppress this statement.

## II

Defendant's first ground for suppression of his statement is that his waiver of his Fifth Amendment rights was neither knowing nor voluntary because his poor English language skills prevented him

---

was not executed until September 28, 2000, when defendant's Arlington County sentence was completed.

from understanding his rights, which were read to him in English. In determining the validity of a waiver, courts must consider the totality of the circumstances, including the background, experience, and conduct of the defendant. *See Moran v. Burbine,* 475 U.S. 412, 421, 106 S.Ct. 1135, 89 L.Ed.2d 410 (1986); *United States v. Young,* 529 F.2d 193, 195 (4th Cir.1975). While a "limited ability to understand English may render a waiver of rights defective," that fact alone is not dispositive. *See United States v. Guay,* 108 F.3d 545, 549 (4th Cir.1997). Other relevant factors, for example, include (i) whether the defendant indicated in the affirmative when asked if he understood his rights,[3] (ii) whether the defendant indicated he understood English;[4] (iii) the length of defendant's residency within the United States;[5] and (iv) defendant's previous encounters with the criminal justice system.[6]

■ These principles, applied here, persuasively support the conclusion that defendant's waiver of his *Miranda* rights was valid. At the suppression hearing, the government presented the testimony of Agent Witting, while defendant elected neither to testify nor to offer any evidence.[7] In the course of the hearing, Agent Witting testified that defendant, who had resided in the United States for over ten years, answered affirmatively when asked whether he understood the rights that were read to him. Significantly, Agent Witting testified that defendant stated that he did not require a Spanish-language interpreter at future court hearings provided that any English speaker did

not speak too rapidly. Agent Witting further testified that the interview with the defendant was conducted in English and that defendant provided responsive, meaningful answers to the Agent's questions. For example, the defendant related that he had been deported in 1996, indicated when he reentered the United States, and stated that he had no fear of persecution or torture were he to be returned to El Salvador.

## III

■ Defendant's second ground for suppression of his statement is that the interview with Agent Witting violated his Sixth Amendment right to be represented by counsel because the interview occurred while defendant was represented by counsel in connection with a separate and distinct charge. This argument is meritless. The Sixth Amendment right to counsel attaches at the "initiation of adversary judicial proceedings." *United States v. Gouveia,* 467 U.S. 180, 187–88, 104 S.Ct. 2292, 81 L.Ed.2d 146 (1984). Adversary judicial proceedings include a "formal charge, preliminary hearing, indictment, information, or arraignment." *Kirby v. Illinois,* 406 U.S. 682, 689, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972). Because defendant had not been arrested, indicted, arraigned, or made an initial appearance on the unlawful reentry charge, at the time of the interview, no Sixth Amendment right to counsel as to that charge then existed. Nor is it relevant that defendant was then represented by counsel on a separate charge. The Sixth Amendment right to

3. *See Guay,* 108 F.3d at 549.

4. *See id.* (finding valid waiver when defendant indicated he could understand English if it was spoken slowly); *see also Campaneria v. Reid,* 891 F.2d 1014, 1020 (2d Cir.1989).

5. *See United States v. Sriyuth,* 98 F.3d 739, 750 (3d Cir.1996) (valid waiver where Thai immigrant was read warnings only in English but had lived in the United States for nine years), *cert. denied,* 519 U.S. 1141, 117 S.Ct. 1016, 136 L.Ed.2d 892 (1997).

6. *See, e.g., Correll v. Thompson,* 63 F.3d 1279, 1288 (4th Cir.1995), *cert. denied* 516 U.S. 1035, 116 S.Ct. 688, 133 L.Ed.2d 593 (1996).

7. Findings of fact were issued from the bench at the suppression hearing on November 17, 2000 pursuant to Fed.R.Crim.P. 12. Only a brief summary of these factual findings is presented here.

counsel is "offense-specific." *See McNeil v. Wisconsin,* 501 U.S. 171, 175, 111 S.Ct. 2204, 115 L.Ed.2d 158 (1991). In other words, defendant's right to counsel stemming from the cocaine charge and conviction in Arlington County did not carry over or apply to the instant charge.[8] Accordingly, the defendant's Sixth Amendment right to counsel was not violated by the interview because that right had not yet attached.

## IV

Defendant's final ground for suppression of his statement is that his rights under the Vienna Convention on Consular Relations were violated. Specifically, the Vienna Convention, to which the United States is a signatory, requires governments to inform a foreign national who has been arrested or detained that he has a right to contact his consulate.[9] At oral argument, the parties stipulated that the defendant was not notified of this right prior to the interview by Agent Witting. Defendant mistakenly contends this violation warrants suppression of his statement.

 To begin with, it is doubtful that the Vienna Convention requirement of notice to the defendant of his right to contact his consulate existed at the time of the interview with Agent Witting. Article 36 of the Convention states that law enforcement should inform a foreign national, "without delay," of his right to contact his consulate when a "[foreign] national ... *is arrested or committed to prison or to custody pending trial or is detained* in any other manner." Vienna Convention, art. 36 (emphasis added). Similarly, the United States Department of State has construed this provision to require consular notification "by the time [he] is booked for detention." United States Department of State, *Consular Notification and Access* 20 (January 1998) <http:// www.state. gov/ www/ global/ legal_affairs/ ca_notification/>.[10] In this case, however, at the time of the interview, defendant had not yet been charged with unlawful reentry, let alone arrested or detained on that charge. At that time, defendant was incarcerated in Arlington on an unrelated drug possession charge. Thus, because defendant had not been arrested or even detained on the unlawful reentry charge at the time of the interview, no requirement had yet arisen under the Vienna Convention for the government to provide defendant with notice of his right to contact the consulate of El Salvador as to that charge.[11]

---

**8.** *See United States v. Melgar,* 139 F.3d 1005, 1010–11 (4th Cir.1998) (holding "government investigations of new criminal activity for which an accused has not yet been indicted do not violate the Sixth Amendment right to counsel"); *United States v. Kidd,* 12 F.3d 30, 32 (4th Cir.1993) (finding no Sixth Amendment violation where government agent contacted defendant and purchased drugs from him after he had been indicted on separate drug distribution charges).

**9.** Vienna Convention, art. 36, provides, in pertinent part, that:

(a) Consular officials shall be free to communicate with nationals of the sending State and to have access to them. Nationals of the sending State shall have the same freedom with respect to communication with and access to consular officers of the sending State;

(b) If he so requests, the competent authorities of the receiving State shall, with-

out delay, inform the consular post of the sending State if, within its consular district, a national of that State is arrested or committed to prison or to custody pending trial or is detained in any other manner. Any communication addressed to the consular post by the person arrested, in prison, custody or detention shall also be forwarded ... without delay. The said authorities shall inform the person concerned without delay of his rights under this sub-paragraph.

**10.** While courts have the responsibility for construing the meaning of treaties, the interpretation of the Vienna Convention by the United States Department of State is given great weight. *See Kolovrat v. Oregon,* 366 U.S. 187, 194, 81 S.Ct. 922, 6 L.Ed.2d 218 (1961).

**11.** Nor can it be persuasively argued that suppression of the statement follows from the

■ Even assuming, *arguendo*, that the government's notice obligation under the Vienna Convention existed prior to the time of the interview, defendant is still not entitled to any remedy, including suppression,[12] because he cannot demonstrate any prejudice caused by the absence of notice. This is so, because, as settled Supreme Court precedent makes clear, a defendant is not entitled to a remedy for a violation of the Vienna Convention unless the violation causes some cognizable prejudice. *See Breard v. Greene*, 523 U.S. 371, 376, 118 S.Ct. 1352, 140 L.Ed.2d 529 (1998) (per curiam). Similar to claims of ineffective assistance of counsel, the asserted prejudice must have affected the outcome of the trial, or in this case, the defendant's decision to waive his *Miranda* rights. *See Arizona v. Fulminante*, 499 U.S. 279, 295–96, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991); *Strickland v. Washington*, 466 U.S. 668, 691, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) ("An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment."); *United States v. Zhang*, No. 99–4901, 2000 WL 951401, *2 (4th Cir. July 11, 2000).

The absence of prejudice to defendant is evident in two respects. First, the Vienna Convention does not require that interviews, interrogations, or even trial proceedings cease or be postponed until consular officials are given access to foreign nationals. Instead, the State Department construes the Vienna Convention as requiring only that consular officials are "entitled to visit and to communicate with their detained nationals" without delay, and while "there should be no deliberate delay . . ., [t]he Department of State would normally expect notification to consular officials to have been made within 24 hours, and certainly within 72 hours." *Consular Notification and Access*, at 20. Thus, even assuming defendant had received timely notice of his rights under the Vienna Convention and had decided to contact his consulate, there is no evidence or reason to believe that the consulate would have communicated with him immediately or that the interview with Agent Witting would have been postponed pending any communication with the consulate of El Salvador.

Second, even assuming further that defendant had been able to communicate promptly with the consulate, there is still no evidence of any prejudice to defendant. The defendant was advised of and made a valid waiver of his *Miranda* rights prior to providing a statement. Had he contacted his consulate, the essence of any advice consular officials might have offered would have been to advise him of his rights under United States law—that is, his *Miranda* rights.[13] Because defendant was provided proper notice of these rights and validly waived them, and because he has offered no evidence to establish how assistance from the consulate of El Salvador would have affected his decision to waive his

---

absence of Vienna Convention notice stemming from his arrest and detention on the Arlington County charges. No causal link exists between any Vienna Convention violation relating to the state charges and the interview with Agent Witting relating to the federal unlawful reentry charge. The state and federal charges are wholly unrelated. Thus, simply put, the Vienna Convention right to notice, like the Sixth Amendment right to counsel, is offense-specific.

**12.** Although the Vienna Convention confers a right to consular assistance following arrest, it is silent as to a remedy, and the Fourth Circuit has not squarely addressed the issue

whether suppression of evidence is an appropriate remedy for a Vienna Convention violation. The Ninth Circuit and the First Circuit, along with a number of lower courts, have held that suppression is never an appropriate remedy for a Vienna Convention violation. *See United States v. Lombera–Camorlinga*, 206 F.3d 882, 885 (9th Cir.2000); *United States v. Li*, 206 F.3d 56, 60 (1st Cir.2000); *United States v. Carrillo*, 70 F.Supp.2d 854, 859 (N.D.Ill.1999); *United States v. Rodrigues*, 68 F.Supp.2d 178, 183 (E.D.N.Y.1999).

**13.** Under the Vienna Convention, consular officials are not permitted to act as attorneys for foreign nationals.

684

*Miranda* rights, the requisite showing of prejudice is absent. *See United States v. Ediale,* 201 F.3d 438, 1999 WL 991435, at *1 (Nov. 2, 1999); *United States v. Alvarado–Torres,* 45 F.Supp.2d 986, 990 (S.D.Cal. 1999), *aff'd.,* No. 99–50597, 2000 WL 1256890 (9th Cir. Sept. 5, 2000). Nor is there any merit to defendant's argument that the interview conducted by Agent Witting is sufficient evidence of prejudice, by itself, to justify suppression of the statement. This is tantamount to an argument that a treaty violation is prejudice per se. This position has been squarely rejected by the Fourth Circuit, in *Zhang,* where a unanimous panel stated that prejudice may not be "presumed from a violation of the [Vienna Convention]." *Zhang,* 2000 WL 951401, at * 2. Accordingly, because the defendant has presented no evidence showing prejudice, his claim for relief for a violation of his rights under the Vienna Convention fails.

Thus, defendant's motion to suppress is denied.

Appropriate orders have issued. The Clerk is directed to send a copy of this Memorandum Opinion to all counsel of record.