No. 2--04--0103

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Kane County. |
| Plaintiff-Appellee, | ) ) ) | No. 96--CF--1290 |
| v. | ) ) | |
| AURELIO MONTANO, | ) ) | Honorable Donald C. Hudson, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE BYRNE delivered the opinion of the court:

Following an evidentiary hearing, defendant, Aurelio Montano, appeals from the denial of his petition under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122--1 et seq. (West 2000)). Defendant, a Mexican national, argues on appeal that he was denied his constitutional right to due process because he was not advised of his right to communicate with consular officials of Mexico upon arrest as guaranteed by the Vienna Convention on Consular Relations, opened for signature April 24, 1963, art. 36, 21 U.S.T. 77, 596 U.N.T.S. 261 (Vienna Convention). Defendant claims that such a right is an individual right, not the right of the foreign state, and that the failure to inform him of his right to contact the Mexican consulate should result in a new trial. For the following reasons, we affirm.

BACKGROUND

Following trial, a jury found defendant guilty of two counts of first-degree murder (720 ILCS 5/9--1(a)(1) (West 1994)) and two counts of concealment of a homicidal death (720 ILCS 5/9--3.1(a) (West 1994)). The trial court sentenced defendant to a term of natural life imprisonment without parole on the murder convictions and two concurrent four-year terms of imprisonment on the concealment convictions. Defendant filed a direct appeal. People v. Montano, Nos. 2--99--0071 & 2--00--0524 cons. (2000) (unpublished order under Supreme Court Rule 23). In the appeal, counsel argued that defendant's due process rights were violated under Doyle v. Ohio, 426 U.S. 610, 49 L. Ed. 91, 96 S. Ct. 2240 (1976), when a police officer testified that defendant invoked his right to silence and asked for an attorney while being questioned by the police. We found that the rule in Doyle--that a defendant's postarrest silence cannot be used to impeach trial testimony or otherwise be used to create an inference of guilt--was violated in this case. However, in light of the evidence presented at trial, we found the error to be harmless. Defendant's petition for leave to appeal to the Illinois Supreme Court was denied on November 29, 2000.

Subsequently, defendant filed a pro se postconviction petition. The trial court appointed counsel and she filed an amended petition. In the amended petition, defendant argued, inter alia, that as a Mexican citizen, he had been denied his constitutional right to due process by the failure to advise him of his right to communicate with the Mexican consulate as guaranteed by the Vienna Convention. In support of his contention, he alleged the following. Defendant was originally detained and later arrested by the Ottawa police department for driving while his license was suspended. As a result of that arrest,

various items were taken as evidence and used against him at trial, including a wallet, business and credit cards, a watch, rings, and a set of car keys. Defendant was released on bond for the driving offense, and he was arrested by the Aurora police department one week later and charged with the instant offenses. Defendant alleged that none of the arresting authorities ever notified defendant of his right to contact the Mexican consulate upon arrest or prior to any interrogation, as provided by article 36 of the Vienna Convention. Defendant further alleged that the failure of the arresting agencies to inform defendant of his right to confer with the Mexican consulate violated the terms of the Vienna Convention and denied defendant due process, including but not limited to the right to remain silent and to have counsel at all stages of the detention and arrest process, thereby denying defendant a fair trial.

An evidentiary hearing was conducted on December 10, 2003. Of relevance to this appeal is defendant's testimony that he is a Mexican national and that at no time after his arrest was he informed of his right to contact the Mexican consulate. David Camic, one of defendant's trial attorneys, testified that he never contacted the Mexican consulate on defendant's behalf.

After taking the case under advisement, the trial court denied the petition. Defendant timely appealed.

ANALYSIS

Defendant's sole contention on appeal is that the trial court erred in denying his postconviction petition, which was based on his argument that, as a Mexican national, his rights were violated because he was not advised of his right to contact the Mexican consulate for assistance prior to and during his interrogation as required by article 36 of the

Vienna Convention. Defendant asserts that the right to contact the Mexican consulate under the Vienna Convention is an individual right, not the right of the foreign state, and that the failure to so advise him deprived him of due process, the remedy for which is a new trial. The State does not contest that defendant is a Mexican citizen or that defendant was not informed of his right to contact the Mexican consulate after he was arrested. Rather, the State maintains that the consular notification right is conferred on the state, and although defendant admittedly was not informed, a new trial is an inappropriate remedy.

We begin this disposition with the appropriate standard of review. Generally, where a postconviction petition is dismissed following an evidentiary hearing, as it was in this case, we review for manifest error. People v. Coleman, 183 Ill. 2d 366, 385 (1998). However, because there are no factual or credibility disputes and the issue presented in this case turns purely on a question of law, our review is de novo. See People v. Caballero, 206 Ill. 2d 65, 87-88 (2002).

Both the United States and Mexico are signatories of the Vienna Convention, which is a multilateral treaty whose purpose is to promote friendly relations among nations by establishing consular relations. Vienna Convention on Consular Relations, opened for signature April 24, 1963, art. 36, 21 U.S.T. 77, 596 U.N.T.S. 261. Article 36 of the Vienna Convention provides in relevant part:

"If he so requests, the competent authorities of the receiving State shall, without delay, inform the consular post of the sending State if, within its consular district, a national of that State is arrested or committed to prison or to custody pending trial or is detained in any other manner. Any communication addressed to the consular post by the person arrested, in prison, custody or detention shall also be forwarded

by the said authorities without delay. The said authorities shall inform the person concerned without delay of his rights under this sub-paragraph." Vienna Convention on Consular Relations, opened for signature April 24, 1963, art. 36(b), 21 U.S.T. 77, 100-01, 596 U.N.T.S. 261.

We first note that defendant never raised the issue regarding the failure to notify him of his right to foreign consular notification during the pretrial proceedings, during the trial, in any posttrial motion, or on direct appeal. Because defendant never raised the issue below or on direct appeal, we find that the failure to raise the issue results in waiver. However, where an alleged error is one affecting substantial or fundamental rights, we may consider the issue on appeal, waiver notwithstanding, under the plain error doctrine. People v. Grant, 232 Ill. App. 3d 93, 106 (1992). While the United States Supreme Court has stated that the Vienna Convention "arguably confers on an individual the right to consular assistance following arrest" (Breard v. Greene, 523 U.S. 371, 376, 140 L. Ed. 2d 529, 538, 118 S. Ct. 1352, 1355 (1998)), article 36 does not create a fundamental right and courts have explicitly refused to equate a violation of article 36 with a Miranda violation. United States v. Chaparro-Alcantara, 37 F. Supp. 2d 1122, 1125 (C.D. Ill. 1999); United States v. Esparza-Ponce, 7 F. Supp. 2d 1084, 1097 (S.D. Cal. 1998).

In People v. Villagomez, 313 Ill. App. 3d 799, 810 (2000), the First District Appellate Court addressed a waiver issue similar to the one presented here. In concluding that the plain error doctrine was inapplicable because no violation of a fundamental right was implicated, the court adopted the analysis of a federal court, which stated: "Although states may have an obligation under the Supremacy Clause to comply with the provisions of the Vienna Convention, the Supremacy Clause does not convert violations of treaty provisions

(regardless whether those provisions can be said to create individual rights) into violations of constitutional rights. Just as a state does not violate a constitutional right merely by violating a Federal statute, it does not violate a constitutional right merely by violating a treaty." (Emphasis omitted.) Murphy v. Netherland, 116 F.3d 97, 99-100 (4th Cir. 1997). We agree with Villagomez and Murphy and likewise conclude that the plain error doctrine is inapplicable here as no violation of a fundamental right is implicated by violating the treaty.

Waiver aside, we would still reject defendant's argument. Defendant argues first that the Vienna Convention confers on an individual the right to consular assistance following arrest. While the Vienna Convention arguably does confer such an individual right (see, e.g., Breard, 523 U.S. at 376, 140 L. Ed. 2d at 538, 118 S. Ct. at 1355; Jogi v. Voges, 425 F.3d 367, 382 (7th Cir. 2005). Contra State v. Sanchez-Llamas, 338 Or. 267, 269, 108 P.3d 573, 574 (2005); Bell v. Commonwealth, 264 Va. 172, 187-88, 563 S.E.2d 695, 706 (2002); United States v. Emuegbunam, 268 F.3d 377, 394 (6th Cir. 2001); United States v. Jimenez-Nava, 243 F.3d 192, 198 (5th Cir. 2001)), most state courts, including Illinois, and federal courts have refrained from deciding whether an individual right exists under the Vienna Convention. Rather, they have concluded, without deciding whether the treaty creates an individual right, that the various remedies available to criminal defendants, such as the quashing of an indictment or the exclusionary rule, are not appropriate remedies for a violation of the Vienna Convention. See, e.g., People v. Hernandez, 319 Ill. App. 3d 520, 531 (3rd Dist. 2001) (following the Seventh Circuit Court of Appeals in holding that suppression is not an appropriate remedy for a violation of the Vienna Convention); Iowa v. Buenaventura, 660 N.W.2d 38, 45 (Iowa 2003) (even if article 36 created an individually

enforceable right, the exclusionary rule simply does not apply to evidence obtained in violation of article 36); Commonwealth v. Diemer, 57 Mass. App. Ct. 677, 685-86, 785 N.E.2d 1237, 1244-45 (2003) (regardless of whether article 36 creates an individual right, suppression is not a remedy for a violation); United States v. Li, 206 F.3d 56, 60 (1st Cir. 2000) (irrespective of whether treaties create individual rights to consular notification, the appropriate remedies do not include suppression of evidence or dismissal of the indictment); United States v. De La Pava, 268 F.3d 157, 165 (2d Cir. 2001) (even assuming that defendant had judicially enforceable rights under the Vienna Convention, a position not adopted, the government's failure to comply with the notification provision is not grounds for dismissal of the indictment); Murphy, 116 F.3d at100 (even if the Vienna Convention could create individual rights, defendant could not obtain habeas relief because his claim was procedurally defaulted); United States v. Page, 232 F.3d 536, 540 (6th Cir. 2000) (although some judicial remedies may exist, there is no right in a criminal prosecution to have evidence excluded or an indictment dismissed due to a violation of article 36); United States v. Chaparro-Alcantara, 226 F.3d 616, 621 (7th Cir. 2000) (it is sufficient for present purposes to assume that such an individual right is created by the Vienna Convention and to confront squarely whether the exclusionary rule is the appropriate sanction for a violation of that right); United States v. Lawal, 231 F.3d 1045, 1048 (7th Cir. 2000) (same); United States v. Ortiz, 315 F.3d 873, 886 (8th Cir. 2002) (even if the Vienna Convention creates an individually enforceable right, it would not follow, on this record, that statements should be excluded merely because article 36 had been violated); United States v. Lombera-Camorlinga, 206 F.3d 882, 885 (9th Cir. 2000) (declining to decide whether article 36 creates an individually enforceable right but concluding that suppression of evidence is an

inappropriate remedy); United States v. Duarte-Acero, 296 F.3d 1277, 1282 (11th Cir. 2002) (violation of the Vienna Convention does not warrant dismissal of an indictment); United States v. Cordoba-Mosquera, 212 F.3d 1194, 1196 (11th Cir. 2000) (same).

We too decline to determine whether the treaty creates a right that is enforceable by individuals in the courts. Instead, as the majority of other courts have done, we focus on whether the remedy of a new trial is an appropriate sanction for violating the treaty, irrespective of whether there is an individual right to enforce it. We have found no case in which a criminal defendant sought a new trial as a remedy for a violation of the Vienna Convention. We note also at this juncture that defendant has not alleged that his Miranda rights were violated or that any particular statements or evidence should have been suppressed based on the failure to observe the Vienna Convention. Thus, we are unsure of how defendant was prejudiced by the failure to contact the Mexican consulate.

In any event, we find that a new trial is not a remedy for a violation of the Vienna Convention. We find that a new trial is not warranted for a number of reasons. First, no express language in the treaty contemplates a new trial as a remedy where a police officer or other arresting authority fails to notify a foreign national of the right to contact the foreign consulate. As pointed out in Diemer and Buenaventure, the Vienna Convention itself does not specify any remedy for a violation. Because of this, several courts have held that, even if a defendant could show prejudice resulting from law enforcement authorities' failure to conform to the treaty, suppression of a statement or other evidence is not available as a remedy. Li, 206 F.3d 56; United States v. Torres-Del Muro, 58 F. Supp. 2d 931 (C.D. Ill. 1999); United States v. Carrillo, 70 F. Supp. 2d 854 (N.D. Ill. 1999); United States v. Rodrigues, 68 F. Supp. 2d 178 (E.D.N.Y. 1999).

Second, since at least 1970, the State Department has maintained that the Vienna Convention does not create enforceable individual rights and that "the [only] remedies for failures of consular notification under the [Vienna Convention] are diplomatic, political, or exist between [signatory] states under international law." Li, 206 F.3d at 63. The State Department's interpretation of any international treaty is entitled to substantial weight because that department of the federal Executive Branch is responsible for negotiating and administering treaties, and also because it generally is the "single authoritative voice" through which the Executive Branch speaks. Li, 206 F.3d at 67 (Selya and Boudin, JJ., concurring). Further, of the 100-plus nations that have signed the Vienna Convention, none apparently provides an individual remedy through its criminal justice system for a violation of the sort that is at issue here. See Emuegbunam, 268 F.3d at 393.

Third, contrary to defendant's argument, several courts have held that to be entitled to relief under the treaty, a party must show actual prejudice. See, e.g., Esparza-Ponce, 7 F. Supp. 2d at 1097. Even the Supreme Court in Breard, which had noted that "arguably" the treaty confers on an individual the right to consular assistance, stated that it is "extremely doubtful" that a violation of the notification right under the treaty should result in the reversal of a conviction without some showing that it affected the trial and resulted in prejudice to the defendant. Breard, 523 U.S. at 377, 140 L. Ed. 2d at 538, 118 S. Ct. at 1355.

To establish prejudice, a defendant must show that: (1) he did not know that he had a right to contact his consulate for assistance; (2) he would have exercised this right; and (3) it was likely the consulate would have assisted the defendant. Villagomez, 313 Ill. App.

3d at 811, citing Chaparro-Alcantara, 37 F. Supp. 2d at 1126; United States v. Tapia-Mendoza, 41 F. Supp. 2d 1250, 1254 (D. Utah 1999).

Here, we find no prejudice. As stated above, defendant does not allege that he was prejudiced by the failure to advise him of his right to contact the Mexican consulate. Defendant does not allege that had the consulate provided him with assistance the trial would have been different. Although it is not contested that defendant was not informed of his right to consult the Mexican consulate, there is no proof of any actual prejudice due to the lack of notification. It is unlikely that had the consulate decided to provide any help, it could have provided any more, or better, assistance to defendant. Defendant was provided with a Spanish interpreter prior to and during the trial and sentencing. The record reflects that during the hearing on defendant's motion to quash arrest and suppress statements, defendant answered in English even though the translator was present. The record also reflects that defendant understood some English but not enough to be comfortable. Defendant had two defense counsel, one of whom, John DeLeon, was fluent in Spanish. It was noted at the beginning of trial that defendant and DeLeon could communicate in Spanish. Defendant admitted such at the hearing on the amended postconviction petition. Defendant has not shown that the Mexican consulate would have done a better job than his defense counsel. In short, without some showing that the violation had an effect on the trial, the violation should not result in overturning the judgment of conviction.

In United States v. Alvarado-Torres, 45 F. Supp. 2d 986 (S.D. Cal. 1999), the court explained how the terms of the treaty would be applied when a foreign national was arrested for a criminal offense. It noted that the treaty does not require law enforcement officers to allow a foreign national to contact a consular representative before they begin an

interrogation. The court further explained that, even if the foreign national requests to contact the consulate after being arrested, the Vienna Convention does not require that the officers delay their interrogation until contact is made. The court stated that the State Department has indicated that officials comply with the notification requirement by notifying the foreign national of his right to contact the consulate before he is booked for detention. Officers would then comply with the treaty by contacting the consulate within 24 hours, or even as late as 72 hours, of the foreign national's request. The State Department has noted that the treaty does not require that the consulate be notified outside of its regular working hours. Alvarado-Torres, 45 F. Supp. 2d at 991.

Defendant relies on the dissenting justices in People v. Madej, 193 Ill. 2d 395 (2000), in support of his argument that he is entitled to a new trial. In Madej, the defendant based a petition for writ of mandamus and a petition for relief under section 2--1401 of the Code of Civil Procedure (735 ILCS 5/2--1401 (West 1998)) on the State's admitted violation of the Vienna Convention. Madej, 193 Ill. 2d at 398-99. The majority found that the section 2--1401 petition was not timely filed and that the failure to inform the defendant of his Vienna Convention rights did not toll the state's procedural time limitations period. Madej, 193 Ill. 2d at 404. Three justices dissented. Justice McMorrow, who dissented in part and concurred in part, believed that the unique circumstances of the case and the fact that the defendant was sentenced to death warranted a remedy for the violation of the Vienna Convention, and she recommended remanding for a new sentencing hearing. She expressed no opinion on what effect a violation of the treaty would have outside the context of a death penalty case or on the facts of that particular case. Madej, 193 Ill. 2d at 410 (McMorrow, J., concurring in part and dissenting in part ). Chief Justice Harrison joined

Justice Heiple in asserting that the remedy for the violation of the treaty was to remand for a new trial. Madej, 193 Ill. 2d at 412 (Heiple J., dissenting, joined by Harrison, C.J.).

In United States ex rel. Madej v. Schomig, 223 F. Supp. 2d 968 (N.D. Ill. 2002), the United States District Court for the Northern District of Illinois considered a writ of habeas corpus filed by Madej. The district court provided that the International Court of Justice (ICJ) has made it clear that procedural default rules that prevent courts from considering the effect of Vienna Convention violations on a defendant's trial violate the terms of the Vienna Convention and that the ICJ's interpretations of the Vienna Convention are binding as a matter of federal law. See Schomig, 223 F. Supp. 2d at 978-79, citing LaGrand Case (Germany v. United States), 2001 I.C.J. 104, at par. 91 (June 27). Although the district court disagreed with the Illinois Supreme Court and granted judgment on Madej's Vienna Convention claim, it still denied relief. Schomig, 223 F. Supp. 2d at 980. The court found that the issue was moot because the defendant had been granted relief from his death sentence on his ineffective assistance of counsel claim. Schomig, 223 F. Supp. 2d at 980. The court noted that, if it did not deem the issue moot, the inquiry would not necessarily end with granting relief. "Since there is no clear Supreme Court precedent about remedies for Vienna Convention violations, it is unlikely that this, or any other Court could premise relief on this basis." Schomig, 223 F. Supp. 2d at 980 n.13. Based on the above, we reject defendant's reliance on the dissenting justices' opinions in Madej.

In light of the foregoing discussion, it is clear that the majority of criminal courts that have addressed the issue have held that any rights created by the Vienna Convention cannot be equated with constitutional rights, fundamental rights, or rights under Miranda. To extend the remedy of granting a new trial for a violation of the Vienna Convention would

be illogical. Apart from waiver, we hold that in this case, even if the Vienna Convention created an individually enforceable right, the violation of the treaty does not warrant a new trial.

Accordingly, the judgment of the circuit court of Kane County is affirmed.

Affirmed.

BOWMAN and HUTCHINSON, JJ., concur.